Henry Garland HANKINS, Plain-
tiff in Error,

v.

H. BRINKMAN, Executor of the Estate of
Eva Brinkman, Deceased, De-
fendant in Error.

No. 42253.

Supreme Court of Oklahoma.

July 10, 1967.

Harry R. Palmer, Jr., Oklahoma City, Ryan Kerr, Altus, for plaintiff in error.

Robert B. Harbison, Altus, for defendant in error.

BLACKBIRD, Justice.

This action for wrongful death arose out of a motor vehicle accident.

Mr. H. Brinkman and his now deceased wife, Eva Brinkman, lived on a farm southeast of Altus, near a settlement known as "Humphreys". On the afternoon of August 7, 1964, the said Mr. and Mrs. Brinkman were traveling in their pickup truck, with Mr. Brinkman driving it, from Altus toward their home. As the truck proceeded in a southeasterly direction, about 4 or 5 miles south of Altus, on U.S. Highway 283, it was followed by two automobiles, one behind the other. The second automobile behind the pickup truck was driven by the plaintiff in error, hereinafter referred to as "defendant", with his wife riding beside him. Desiring to pass both the auto and the truck ahead of him, defendant, on the way to his home in Texas, turned out of the west lane of the highway, into its east lane, driving his auto past the one that had been ahead of him, and, just as he was about to pass the pickup truck, the latter started turning southeasterly across the east lane of the highway, towards its intersection with a county farm-to-market road extending southeasterly in a diagonal manner from the highway toward Humphreys, and intersecting, a number of feet east of it, with another county road which extended straight east and west. The latter straight county road also intersects highway 283 at approximately 182 feet south of said highway's intersection with the diagonal county road, so that there is a plot of ground approximately the shape of a right angle triangle between the two lengths of the county road, and the highway which forms its western side.

When defendant noticed the Brinkman truck veering off to the left, or east, lane in front of his car, he applied his car's brakes, and turned it to the right. When both of the truck's front wheels, and its left rear wheel, were east of the highway's center line, the left front corner of defendant's car collided with the truck's right rear corner, causing the truck to run off the road into a bar ditch, and turn over on its side. Both Mr. and Mrs. Brinkman were injured when the truck turned over, and they were taken to the Altus hospital for emergency treatment. Mrs. Brinkman lingered there for 61 hours, and, on August 12th, died of the injuries she received in the accident. Mr. Brinkman made sufficient recovery from his injuries to thereafter be appointed executor of Mrs. Eva Brinkman's estate; and, as such executor, he commenced this action in November, 1965, to recover damages on behalf of said estate against defendant, on account of the latter's alleged negligence in causing the accident. As hereinafter used, the word "plaintiff" will sometimes refer to Brinkman, as an individual, and at other times, to him in his capacity as executor of his deceased wife's estate.

In his petition, plaintiff alleged, among other things, that he signaled his intention to turn left off the aforementioned highway onto the county road, and that the proximate cause of defendant's car's colliding with his pickup truck was defendant's negligence in (1) driving his car to the left of the center of the highway, within 100 feet of its intersection with a county road, in violation of the Oklahoma statutes; (2) driving his car in such a negligent manner, and at such an excessive rate of speed as to (a) endanger the safety of others using the highway, and (b) to render impossible stopping said car within its assured clear distance ahead.

Defendant's amended answer consisted of a general denial, a special denial of any negligence causing the accident, and allegations that plaintiff's negligence caused, or contributed to, the accident. It alleged that, when the collision occurred, plaintiff and

his wife were engaged in a "joint journey or enterprise" in which he was her agent, making his negligence imputable to her, and a bar to plaintiff's recovery. Defendant further alleged that he was confronted with a sudden emergency not brought about by his negligence, and, in reacting thereto, he acted as a reasonably prudent person would have acted under the same, or similar, circumstances.

A verified reply filed by plaintiff contained a qualified general denial of the allegations of defendant's amended answer, and, in one, of two, special denials, plaintiff denied that in driving the truck, he was the agent of his wife, and that any negligence on his part was imputable to her.

At the trial it was established that the collision occurred at a point on U.S. Highway 283 within 50 to 100 feet of its intersection with the diagonal county road, but it was also established that no "no passing zone" was indicated there by any sign, or emblem, on, or around, that segment of said Highway, and defendant and his wife both testified to the effect that the existence of said intersection was concealed from their eyes by high weeds between it and them. One of the questions, pertaining to whether or not negligence on the part of plaintiff proximately caused the collision, was whether or not he was negligent in the matter of signalling his intention to turn off the highway onto the county road.

Plaintiff, who was 76 years old, testified that he looked in his truck's rear view mirror before starting to turn into the county road, that he saw one car (which he was unable to identify) at least 400 feet behind him, and that "I stuck my hand out the window", by way of signaling that he was going to make the turn. When plaintiff was asked on cross-examination if, before he turned across the highway's center line, his wife warned him about a car being behind him, he testified:

"A   Yes, she did.

"Q   And what did she say?

"A   Well, I don't know whether she warned me or not; now I might have saw the car myself."

The defendant testified that before his car passed the one between it and plaintiff's truck, he signaled he was going to do this, both by using his car's electric turn signal light and honking its horn; that, when he passed this car, it was traveling about 40 miles per hour, and that plaintiff's truck, about 125 feet ahead of it, was traveling about 30 miles per hour. Defendant estimated the speed of his own auto at 55 to 60 miles per hour as he started to pass the first car and testified that he did not again sound his auto's horn before attempting to pass the truck. He further testified that plaintiff gave no signal indicating that he was going to turn left ahead of his car. On cross-examination, plaintiff revealed that he, accompanied by his wife, had talked to plaintiff's daughter, Mrs. Choate, when she came to see her parents at the Altus hospital the day of the accident. Defendant contradicted Mrs. Choate's testimony that he then told her that he didn't know whether her father had given a turn signal, or not. When interrogated concerning his and his wife's conversation with Mrs. Choate, defendant stated: " * * *   she said they had been trying to get their daddy to quit driving for fear of something like that." The portion of Mrs. Choate's testimony about this, and other matters, beginning in her direct examination and continuing into her cross examination, is as follows:

" *   *   *

"Q   Did you make any statement to him (defendant) about your trying to get your father to quit driving a car?

"A   No, sir, I didn't make that statement because papa drove all the time.

"Q   Prior to the accident?

"A   Up to the accident. He drove all the time; he had to drive to take care of his farms and everything. He had never had a wreck; why should I ask him not to drive.

*     *     *     *     *     *

CROSS EXAMINATION
"BY MR. PALMER:

"Q  Mrs. Choate, your daddy had had an accident just a year before, with your mother, hadn't he?

"A  Not enough that I didn't know anything about it until this all come up; it wasn't bad enough that I wasn't notified or anything about it.

"Q  Where they went off the road down here on a slick spot?

"A  Well, as I say, I had never heard about it and me living right here in town.

"Q  When he ran into a car down at the parking lot, the other wreck, you didn't hear about that until the deposition?

"A  No, sir. It wasn't serious enough. I didn't never worry about papa driving; he never went no where by hisself. I can say that I never honestly remember him ever coming to town without my mother.

"Q  Since this wreck, and you heard the testimony, your daddy is still driving the pickup, isn't he?

"A  Yes, sir.

"Q  Are you driving with him?

"A  Well, sometimes.

"Q  Well, he drives now by himself, doesn't he?

"A  Yes, sir.

"Q  And he plowed 145 acres, driving this big tractor, in the spring, didn't he?

"A  Yes, sir, but you don't know what an effort—I cry every time I see him get on and off the tractor. You don't know. He has to wear braces on both knees. He has to take a sedative to sleep at night. He just won't give up.

"Q  The point I'm making, Mrs. Choate is: You testified that you were greately disturbed about his driving; or were not disturbed before, your mother was always with him.

Are you disturbed about him driving out on the highway?

"A  Well, he is nervous. The wreck has hurt his nerves; but he had drove all these years, and never—

"Q  He has had this palsy for years, hasn't he?

"A  Yes, sir; it has got worse the last year.

"*  *  *."

Both plaintiff's and defendant's testimony was corroborated in various details, and in varying degrees, by the testimony of other witnesses, and both parties introduced documentary evidence. Among the exhibits introduced by plaintiff were photographs of U.S. Highway 283 made with the camera facing south at a point about where defendant's auto turned into its east lane to pass the other car and truck, showing no weeds standing to obstruct a southbound driver's vision of said Highway's intersection with the diagonal county road. One of the undisputed facts to which defendant testified however, was that the weeds, which, according to him and his wife, concealed the intersection from their view, were cut down almost immediately after the accident.

At the close of the evidence, the court, as requested by plaintiff, included among its instructions to the jury, one which stated: "No vehicle shall, at any time, be driven to the left side of the roadway when approaching within 100 feet of * * * any intersection." In its instruction numbered "(14)", the court instructed the jury more favorably toward plaintiff than he had requested, in stating that, under the evidence of the case, plaintiff's negligence, if any, could not be imputed to his decedent, Mrs. Brinkman.

At the close of its deliberations, the jury returned a verdict for the defendant, and the journal entry of an order the court thereafter entered indicates that judgment was rendered accordingly.

After the judgment, plaintiff filed a motion for a new trial on three grounds, one of which was "That the verdict of the jury

is not sustained by sufficient evidence, and is contrary to law and the instructions of the court." The trial court sustained the motion for the following announced reasons:

"* * * this verdict, in the Court's opinion, was not sustained by the law and the evidence but purely upon the trembling appearance of the plaintiff in court which led the jury to believe that he should not have been driving the pickup at the time of the accident. This verdict shocks the conscience of the Court. The Court cannot approve the verdict.

"* * *."

In urging reversal of the trial court's order and/or judgment sustaining plaintiff's motion for a new trial, defendant's position stated generally, and in brief substance, is that said ruling constituted an abuse of discretion and was arbitrary and capricious; that said order was based upon no valid ground that the record supports. In the course of his argument, defendant says there was ample evidence to make resolution of the question of whether any negligence on his part was the proximate cause of plaintiff's injury, dependent upon the determination of facts from conflicting evidence. By pointing out that plaintiff neither demurred to the evidence, nor moved for a directed verdict in his favor, defendant infers that plaintiff evidently regarded this as a matter solely for the jury's determination. He says, in substance, that, in granting plaintiff a new trial, the trial judge was "second guessing" the jury as to determinations beyond his proper prerogative. He cites, among others, the case of Hansen v. Cunningham, Okl., 285 P.2d 432, in which we quoted from Alridge v. Patterson, Okl., 276 P.2d 202, where this Court in the course of reversing an order for a new trial, entered by the same trial judge, said:

"As has been indicated in previous cases, if allowed the unbridled substitution of his own opinion for that of the jury, he could in effect partially abrogate both our jury system and right of appeal by repeatedly setting aside successive verdicts and granting new trials until a verdict was returned that conformed to his own personal idea of an adequate recovery."

Defendant's brief also cites Nealy v. Morris, Okl., 333 P.2d 301, in which we reversed a trial court that granted a new trial for the reason that he could not "conscientiously agree" with the jury's verdict.

In seeking to justify the trial court's granting a new trial, plaintiff refers to certain portions of the evidence, drawing his own conclusions from it as to defendant's foreseeability, and other elements of negligence, and as to proximate cause, which he infers compelled a verdict for his client and demonstrates the correctness of the trial judge's hereinbefore quoted statement that the jury's verdict for the defendant was not sustained by the law and the evidence. By referring to a part of the record, and to personal observations of Mr. Brinkman's disabled condition during the trial, plaintiff attempts to support said judge's announced conclusion that the verdict was arrived at "purely upon the trembling appearance of the plaintiff in court, which led the jury to believe that he should not have been driving the pickup at the time of the accident." Plaintiff also says: "It was further apparent to the trial judge that the jury imputed to the decedent, Eva Brinkman, the acts of her husband, as driver, at the time of the accident, all in direct violation of the court's Instruction No. 14, * * * (which, as hereinbefore shown, forbade the jury to impute any negligence, of which Mr. Brinkman may have been guilty, to Mrs. Eva Brinkman, plaintiff's decedent)." This representation of the trial Judge's *unexpressed* view ignores the well established presumption that jurors do their duty with reference to following proper instructions (see Cooke v. Townley, Okl., 265 P.2d 1108, 6th syll., and other cases digested in 2A Okl.Dig., Appeal & Error ⟪930(2), and cited in the footnotes to 5 Am.Jur., 2nd, "Appeal & Error", § 890); and plaintiff, of course, does not contend that instruction No. 14 was improper.

Although defendant's brief contains some argument—not persisted in—that due to the absence of predicate in the trial court, for our reviewing the trial record in this appeal, such review is not necessary to determine whether that court erred, or abused its discretion, in granting a new trial, we have treated it as such a case (see Hansen v. Cunningham, supra, 1st syll.); and, after carefully examining the record, cannot say that the verdict before us was the result of any other consideration on the part of the jury, than a determination that no negligence on the part of the defendant was the proximate cause of plaintiff's decedent's fatal injuries. We have already shown by reference to testimony elicited on plaintiff's behalf concerning the weeds along Highway No. 283, just prior to the accident, that there is some refutation in the record to the statement in plaintiff's brief, that: "The pictures of the scene of the accident appearing in the record, render apparent the futility of the defendant's testimony that the intersection (with the county road) was not apparent to any motorist driving with care"; and we think it was the jury's sole prerogative to determine whether defendant should have been forewarned, by seeing highway machinery east of said highway, that he was approaching a road intersection. Nor is it for us to contradict the jury's determination in such matters by unequivocally asserting, as plaintiff's brief does, that "any prudent driver placed in the position of the defendant as he approached the slow Brinkman farm pickup should have anticipated that it was preparing, and would in all probability, turn on the surfaced, intersecting farm-to-market road." We think the members of the jury, deliberating among themselves, were the best judges of what a prudent driver should have anticipated under the circumstances in which defendant was attempting to pass plaintiff's pickup truck.

Nor do we find any indication in the record that the jury was induced, by plaintiff's demeanor and physical condition at the trial, into assuming therefrom (as plaintiff's brief represents) that, at the time of the accident, " * * * (plaintiff) was not capable of driving on the highway * * *". Mr. Brinkman's physical condition at the time of the accident was not an issue in the case, but the testimony that (without objection) got into the record as to his physical condition, makes it reasonably clear that he was more capable, physically, at the time of the accident, then afterward and when he appeared in court. There is nothing to indicate that the members of the jury did not understand this, or to support the trial judge's assumption as to their belief. In this respect, this case differs from Horn v. Sturm, Okl., 408 P.2d 541, relied upon by plaintiff for his position that the trial judge could draw from observations made at the trial, in determining that plaintiff had not had a fair trial and that the jury's verdict should not be allowed to stand. Here, there are not the "matters *disclosed by * * * (the) record*" that we said, in that case, sufficiently negated the claim that "the court's action was arbitrary or capricious." In view of the record in this case, we have reached the opposite conclusion here, and hold that, in sustaining plaintiff's motion for a new trial, the trial court abused the "sound legal discretion" referred to in Jones v. Myers, Okl., 332 P.2d 32.

In accord with the foregoing, the order and/or judgment appealed from herein is hereby reversed, and this cause is remanded to the trial court to vacate same and enter a new order overruling plaintiff's motion for a new trial.

JACKSON, C. J., and DAVISON, WILLIAMS, BERRY, LAVENDER and McINERNEY, JJ., concur.