Wilbur Max BUCK and Henry L. Buck,
Plaintiffs in Error,

v.

Mrs. Carrie COLE, Defendant in Error.
No. 42529.

Supreme Court of Oklahoma.
March 31, 1970.

Chappel & Maddux, Nowata, for plaintiffs in error.

Harris, Graham & Harris, Bartlesville, for defendant in error.

BLACKBIRD, Justice:

This action for damages arose out of a collision between a 1942 Model 2½ Ton GMC tandem-wheeled oil field truck and a 1961 Model Mercury Sedan, on a bridge over which a county road crosses a creek about 3 miles north, and 5 miles east, of Dewey. The Mercury, of which defendant in error (hereinafter referred to as "plaintiff") was the driver and an owner, had approached the bridge from the west, with plaintiff's daughter, Mary, and her mother-in-law riding with her as passengers, and was stopped toward the western end of the bridge (which had a width of 15 feet)

when the truck, coming across the bridge from its other end, collided head-on with said Mercury Sedan. The truck was driven by the plaintiff in error, Wilbur Max Buck, and was owned by the plaintiff in error, Henry L. Buck, an oil and gas producer and drilling contractor. These men will hereinafter be referred to by name or by their trial court designation of "defendants".

Plaintiff's petition indicated that her Mercury was already on the so-called "one-way bridge" when the truck approached it, and alleged, among other things in substance, that it had the right of way over the truck and that the defendant truck driver was negligent in failing to yield the right of way to plaintiff, in failing to keep a proper look-out as his truck approached the bridge, in operating the truck with defective brakes, and in failing to control it (so as to avoid the collision).

Each defendant filed a separate, but identical, answer, consisting of a general denial and the allegation that any damage plaintiff suffered was caused solely by her own negligence.

The undisputed evidence at the trial established that as the large oil field truck approached the bridge, it was transporting a heavy metal doghouse, of the type used at oil and gas well drilling sites, and that it was the last of the above named drilling contractor's equipment then being moved, from one, to another, of the well locations involved in his operations. In apparent recognition of the potential hazard to other motorists of the truck's wide and heavy load on the narrow and winding graveled county road, one Jimmy Sprague, another of the drilling contractor's employees, had preceded the truck in his own automobile to the top of a hill near a point southeast of the bridge, where the road begins a northwesterly curve that does not completely end until it has traversed the bridge at the bottom of the hill. At the top of this hill, Sprague stopped his car and watched the truck pass him and proceed on down the hill toward the bridge.

According to the testimony of the truck driver and defendant, Wilbur Buck, the crest of the above mentioned hill hides the bridge below from the view of motorists approaching it from the east on said road (as was the truck) until after they "get around" this crest. He further testified, in substance, that when his truck had traveled far enough around this down-hill curve that he could see the bridge below, he also saw plaintiff's Mercury stopped on the bridge. In his own words, this witness described the situation as: "These ladies were * * * just sitting there" when he first saw them. He further related that he then applied his truck's brakes "lightly", indicating that if he had "slammed" them on, in view of the road's graveled surface, he would have lost control of the truck completely. This witness further testified that his truck was then moving so slowly that the "vacuum pulling off of it * * * killed the motor." He further testified that the truck had vacuum brakes "and when a motor dies on a vehicle with vacuum brakes it shuts the vacuum off because the vacuum on the brakes is supplied by the motor." The witness further testified that when the truck struck plaintiff's car, standing on the bridge's western end, it was traveling "less than ten mile an hour", but further testified that when he first saw plaintiff, after the truck had collided with her car, pushing it back toward the west edge of the bridge, and both vehicles had come to a stop, she had stepped out of her car and was walking around it holding on to its side. According to Buck, he then got out of his truck's cab and walked to plaintiff's car, to see if any of its occupants were hurt. He stated that they all got out of the car and walked around, and, though plaintiff appeared to be injured on the lip, his offer to call an ambulance for them was declined. The witness further testified that he asked plaintiff why she stopped her car on the bridge and she answered: "We was just admiring our garden spot." The above mentioned Sprague, who, as another witness for defendants, testified that, when he heard the noise of

the collision, he ran down the hill to its site on the birdge, further testified that, in a conversation he had with plaintiff's mother-in-law while she was sitting in the car after the accident, she stated essentially the same thing.

Both plaintiff and her daughter, who testified that their home was on top of the hill, admitted on cross-examination that they had previously had a garden down the hill, south of the bridge. Plaintiff denied that they had a garden there that year, and testified that they hadn't had one there "in quite a while", but her daughter, when asked if there was a garden planted there then, and if the ground was broken for that purpose, admitted that "it could have been broken up for a garden." When plaintiff was asked if the garden spot could be seen from the bridge, she testified in the affirmative, but her cross-examination continued as follows:

"Q. Now, if you are sitting on that bridge and your car is facing east can't you look over your shoulder to the right and see the garden spot?

A. No, sir, you can't.

Q. You can't? It's impossible to do that?

A. No. You would have to turn all the way around back like this (Indicating).

Q. But it can be seen from an automobile if it is facing the east, can it not, and if the automobile is sitting on the bridge?

A. I wouldn't look for it.

Q. But it can be seen, can't it? That's my question.

A. I can't say that. I can't answer that I don't believe.

Q. You don't know whether or not it can be seen?

A. I can't turn my head that far around."

According to the plaintiff and her daughter, the reason that their Mercury was stopped on the birdge when the truck struck it was that when they saw the truck approaching the bridge from the other side of the creek, with its driver motioning to them to back off of the bridge, and plaintiff, in an attempt to comply, applied the Mercury's brakes suddenly, its motor died, and the collision occurred before she could get the Mercury moving in reverse gear to get it back off of the bridge.

After plaintiff's doctor and a Highway Patrolman had testified as additional witnesses for her, and one Earl Parrish, an additional witness for defendants, had testified, among other things, in substance, that, as the drilling contractor's automobile mechanic, he had repaired the master cylinder of the involved trucks' braking system about two weeks before the collision and that the truck's brakes were working excellently after the repair job was completed, both sides rested; and plaintiff moved for a directed verdict. The trial court overruled this motion in the following words:

"Well, I believe that it becomes a question of fact then who the jury wants to believe about whether or not the plaintiff had actually stopped her car to view the garden or not. If they want to so believe why that would, I think, have a bearing on the outcome of the case. So the motion is overruled."

Thereafter the case was submitted to the jury under the court's instructions, which included the following, as its Instruction No. 10:

"The law of this State provides that no person shall stop, stand or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic-control device, in any of the following places:

" '* * * Upon a bridge or other elevated structure upon a highway or within a highway underpass; * * *' "

When the jury had completed its deliberations, it returned a verdict for the defendants. Thereafter, the court overruled a motion by plaintiff, for judgment notwith-

standing the verdict, and rendered judgment in accordance with the verdict. Later, however, the court sustained the motion for a new trial filed by plaintiff; and defendants have lodged the present appeal.

For reversal of the trial court's order and/or judgment sustaining plaintiff's motion for a new trial, defendants argue, under two propositions set forth in their brief, that (although the order does not disclose any reason for the court's said ruling) the record of the trial proceedings supports neither of the grounds for a new trial alleged in plaintiff's motion, which, when analyzed, amount, in essence, to only the two generally phrased ones that "the verdict is not sustained by sufficient evidence and is contrary to law", and "Error of law occurring at the trial and excepted to by the plaintiff." On the basis of specific references to the record of the trial, defendants, in effect, contend that the trial was without any error of law that would furnish ground for a new trial, and, after references to the evidence designed to show that it was sufficient to support the conclusion that the proximate cause of the collision was plaintiff's negligence per se in stopping on the bridge in violation of 47 O.S.1961, § 11–1003 (the statute upon which the court's hereinbefore quoted Instruction "No. 10" was based), and that the collision, from the standpoint of the truck driver, Wilbur Buck, was unavoidable, in view of the emergency created by his truck's sudden brake failure, defendants' argument proceeds to the conclusion that the evidence presented issues for the jury's exclusive determination, and that the judge abused his discretion under the principles enunciated in such cases as Cox v. Broughton, Okl., 428 P.2d 284; Croft v. Dodson, Okl., 310 P.2d 375, and Jones v. Myers, Okl., 332 P.2d 32, in ordering a new trial.

On the other hand, plaintiff points out that the above-cited statute excepts, from its prohibition against stopping on a bridge, a situation where it is necessary to do that in order "to avoid conflict with other traffic * * *"; and she argues that, according to the testimony elicited on her behalf (as hereinbefore indicated), the purpose for which she had stopped her Mercury on the bridge was to try to get out of the way of the oncoming truck. The weakness in this argument is that it is based solely upon her own evidence, and does not recognize the jury's prerogative to believe the testimony elicited on defendants' behalf to the effect that the reason plaintiff's Mercury was stopped on the bridge was not to avoid traffic, but so that it occupants could view the hereinbefore mentioned garden spot.

■ In her replies to defendants' arguments, plaintiff contends, among other things in substance, that the issue of her contributory negligence was not raised, since defendants' answers plead only that her own negligence caused whatever damage she may have suffered from the collision, citing Colonial Refining Co. v. Lathrop, 64 Okl. 47, 166 P. 747, L.R.A.1917F, 890. Although plaintiff's point is not served by referring to Ladow v. Oklahoma Gas & Electric Co., 28 Okl. 15, 119 P. 250, 257, as defining "contributory negligence" to be merely negligence on the part of the plaintiff, it is unnecessary to become involved in a discussion of the semantics of defendants' answers, because the quotation from the Lathrop case appears in the context of a lengthy discussion to determine whether, or not, the trial court's giving of certain instructions was error. The present case involves a different situation. Here, the plaintiff not only interposed no challenge, or objection, to defendants' pleadings before the trial, but sat by during the trial, while they were introducing evidence contemplated to show that her negligence caused, or contributed to causing, the collision, (thus making that an issue to be submitted to the jury) without objecting that such evidence was inadmissible under the pleadings. In view of such conduct, and her failure to object to any instruction the trial judge employed in submitting the issue of her contributory negligence to the jury, her motion for a new trial came too late to raise any question as to the technical accuracy with which de-

fendants pleaded her fault as the proximate cause, or a contributing cause of the collision; and, absent any claim that the court's said instructions to the jury constituted fundamental error, and a showing of resulting prejudice to her, she is without a predicate upon which to now contend, in this appeal, that the submission of that issue to the jury was a valid ground for granting her a new trial. In so concluding, we adhere to the principles applied in Vickers v. Horster, Okl., 451 P.2d 7, 12, McMillan v. Lane Wood & Co., Okl., 361 P.2d 487, and Harris v. Conway, Okl., 343 P.2d 1069.

As it is not contended that there was sufficient evidence of defendants' negligence for that issue to be submitted to the jury, it is unnecessary to discuss, in detail, the arguments under that portion of plaintiff's brief labeled "REPLY TO DEFENDANTS' PROPOSITION NO. 1". However, we note that in her zeal to make it appear that, on the basis of the truck driver's own testimony, he *knew* that the truck's brakes were defective, before it started down the hill toward the bridge, her argument omits mention of his testimony to the effect that the truck's brakes had been functioning properly during its previous use, which included other trips it had made the same day, over the same road, hill, and bridge, transporting other drilling equipment to and from the same two well locations, between which the doghouse was being transported, during the particular trip on which the subject collision occurred. Alluding to plaintiff's argument referring to the testimony of the truck driver, Buck, and the truck mechanic, Parrish, and inferring that, on the basis of the evidence, defendants were negligent in causing the truck to start down the hill without enough reserve pressure in its braking system that it could be controlled in such a way as to avoid colliding with any motor vehicle that might happen to be on the bridge (which the truck driver knew was at the bottom of the hill, but which couldn't be seen from its top), in the event the truck's motor died during its descent, we think the evidence presented a question for the jury as to whether, or not, this constituted negligence on the defendants' part, as we have held in other cases, where the drivers' duties, in particular situations, are not completely prescribed by statute. See Southwestern Bell Telephone Co. v. Martin, Okl., 370 P.2d 840, and other cases following Garner v. Myers, Okl., 318 P.2d 410.

Without unnecessarily lengthening this opinion to discuss all the various arguments of the parties, we think it sufficient to say that we have thoroughly examined the record, and can come to no other conclusion than that, in sustaining plaintiff's motion for a new trial, the trial judge was doing what the defendant in Hankins v. Brinkman, Okl., 429 P.2d 985, termed "'second guessing' the jury as to determinations beyond his proper prerogative." From our view of the record, it is our opinion that it fails to sustain any of the allegations of error, and we can only conclude that the trial judge's reason for granting the new trial was that he did not agree with the determination, inherent in the jury's verdict, that negligence on the part of the plaintiff caused, or contributed to causing, the collision and her resulting injuries. As shown in Cox v. Broughton, and other cases hereinbefore cited, this is not a valid ground for granting a new trial. The order and/or judgment, herein appealed from, is therefore reversed, and this cause is remanded to the trial court with instructions to set it aside.

All the Justices concur.