2007 OK CIV APP 121

Mike BATMAN, Plaintiff/Appellant,

v.

METRO PETROLEUM, INC.,
Defendant/Appellee.

No. 102,919.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Aug. 10, 2007.

N. Franklyn Casey, Casey & Jones, P.C., Tulsa, OK, for Appellant.

J. Philip Adamson, Tulsa, OK, for Appellee.

JOHN F. REIF, Judge.

¶1 This case concerns a dispute over the price of fuel that convenience store owner Mike Batman purchased from fuel distributor Metro Petroleum, Inc. The price stated in the parties' written contract was one cent per gallon above the actual delivered cost price of fuel. Mr. Batman has contended the "cost price of fuel" includes a 1% discount Metro receives after delivery for paying the refinery within ten days of receiving the fuel. Metro has contended the "cost price of fuel" is determined when the fuel is actually delivered to Mr. Batman.

¶2 The trial court initially entered summary judgment for Mr. Batman; however, the Court of Civil Appeals reversed the summary judgment and remanded the case for trial. The Court of Civil Appeals ruled the dispute involved a mixed question of law and fact for a jury to determine under proper instructions.

¶3 Following a jury trial on remand, the trial court entered judgment on the jury verdict in favor of Metro. Thereafter, Mr. Batman asked the court to grant him a judgment notwithstanding the verdict or, in the alternative, a new trial. In support of this relief, he contended the undisputed evidence showed Metro caused the ambiguity concerning the price of the fuel. In particular, he argued that "[b]y concealing the fact that it received the Discount, Metro is the party that caused the uncertainty to exist [so that] the contract must be construed against Metro, in favor of Batman."

¶ 4 After the trial court denied his request for post-judgment relief, Mr. Batman brought this appeal. Subsequently, the trial court awarded Metro a prevailing party attorney fee pursuant to 12 O.S.2001 § 936, and Mr. Batman filed an amended petition in error to challenge the attorney fee award.

¶ 5 On appeal, Mr. Batman reurges his contention that the undisputed evidence demonstrated Metro created the ambiguity over the price of the fuel. He maintains that Metro "failed to meet its burden of producing sufficient evidence to overcome the legal presumption ... that all ambiguities in a contract are to be construed against the drafter thereof." He also argued for the first time that the jury overlooked Metro's failure to rebut the presumption because Metro's counsel prejudiced the jury against Mr. Batman in his opening statement. Mr. Batman contends references in the opening statement about his native language being Arabic and his emigration from Syria to attend aviation school was a veiled comparison of Mr. Batman to the 9/11 terrorists. For the reasons that follow, we reject Mr. Batman's propositions of error and affirm.

## I.

¶ 6 The mere fact that Mr. Batman and Metro had different subjective understandings about the meaning of "actual delivered cost price of fuel" does not give rise to a presumption that the contract must be construed against Metro. As the Court of Civil Appeals observed, the conflicting parol testimony of the parties in this regard created "a genuine issue of material fact regarding the parties' contractual intent." In resolving this issue of material fact, the jurors were twice instructed they were "the sole judges of the believability of each witness and the value to be given the testimony of each." They were also told this responsibility included assessing "the reasonableness" of each parties' testimony. This includes their subjective understandings.

¶ 7 The court further instructed the jury that the party who seeks to recover on a claim has the burden of proof on that claim. In this case, Mr. Batman carried the burden of proving that the contract be interpreted according to his understanding of the contract.

¶ 8 In addition to weighing the evidence on the issue of the parties' contractual intent, Instruction No. 9 directed the jury "to decide the meaning of ... THE ACTUAL DELIVERED COST PRICE OF FUEL [by] decid[ing] what the intent of the parties was when they made their contract." Instruction No. 9 further directed that "[t]o decide what [the parties'] intent was you should first examine the language of the contract."

¶ 9 The jury's examination of the language in the contract was further guided by Instruction No. 10. This instruction told the jury "[to] interpret the words of the contract in their ordinary and popular sense, unless [the jury] decide[d] the parties used them in some other sense."

¶ 10 Instruction No. 9 also advised the jury that they *may* consider things other than the language and, particularly, that they "*may also consider* the circumstances under which the parties made the contract, and what the parties themselves believed the term meant as shown by the evidence." (Emphasis added.) Clearly, the jury was not required to go beyond the language of the contract.

¶ 11 Finally, Instruction No. 15 advised the jury that "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Instruction No. 16 similarly directed the jury to interpret the unclear terms in the contract most strongly against the party responsible for the uncertainty. However, the jury was to apply this rule only "[i]f you cannot decide the intention of the parties after considering Instruction Nos. 8 to 15."

¶ 12 The trial court's instructions track the statutory directives for interpreting contracts set forth in 15 O.S.2001 §§ 151 through 178. These directives emphasize that (1) the intent of the parties controls, § 152; (2) the intent of a written contract is to be ascertained from the writing alone, § 155; (3) words of a contract are to be understood in their ordinary and popular sense, § 160; and an uncertainty in a contract is interpreted against the party who caused the uncertainty

only if the uncertainty cannot be resolved by other rules of interpretation, § 170.

■ ¶ 13 The chief barrier to granting any relief to Mr. Batman on his post-judgment motions is the fact that the jury returned a general verdict. Neither the trial court nor this court is able to determine the basis upon which the jury returned its verdict in favor of Metro. That is, the jury may not have believed Mr. Batman's testimony concerning his subjective understanding of the contract. If the jury did believe his testimony, the jury may not have found Mr. Batman's subjective understanding to be reasonable, or may have concluded that Mr. Batman did not otherwise carry his burden of proof. Finally, the jury may have first and exclusively considered the language "actual delivered cost price" and concluded that the ordinary and popular sense of this language meant the cost or price at the time of delivery. In any event, we need not speculate further about the basis of the verdict, because "a general verdict on conflicting evidence presumptively includes a finding of all the facts necessary to support it." *Wilson v. Mid–Continent Cas. Co.,* 1973 OK 50, ¶ 6, 510 P.2d 274, 276.

¶ 14 The record presented disclosed disputed issues for the jury to resolve as well as competent evidence to support the jury's general verdict. Accordingly, the trial court did not err in denying Mr. Batman's motion for judgment notwithstanding verdict. Similarly, the trial court did not abuse its discretion in refusing to grant a new trial.

## II.

■ ¶ 15 We next consider Mr. Batman's complaint about the unproven statements in Metro's opening statement that Mr. Batman's native language was Arabic and he emigrated from Syria to attend aviation school. We began with the general rule that "a prevailing party's opening statement is not grounds for reversal unless adversary's substantive rights have been prejudiced." *Smith v. Gizzi,* 1977 OK 91, ¶ 5, 564 P.2d 1009, 1010 (footnote omitted). "The fact counsel for [the prevailing party] may have improperly mentioned a matter as to which no evidence was introduced, does not establish that such statements were necessarily

prejudicial if they were not of basic materiality." *Id.,* 564 P.2d at 1010–11 (footnote omitted).

■ ¶ 16 "The crucial question is whether an improper opening statement substantially influenced the verdict or denied the defendant a fair trial." *Id.,* 564 P.2d at 1011. An appellate court "will not set aside a judgment [on these grounds] unless it clearly appears [the opening statement] did influence the verdict." *Id.* Where the jury is instructed that statements of counsel are not part of the evidence, the party complaining about the statement has the burden to demonstrate how the statement biased the jury or influenced the verdict. *Id.*

■ ¶ 17 In the case at hand, the trial court instructed the jury that "the statements, remarks and arguments of the attorneys are intended to help you in understanding the evidence and applying the law, but are not evidence" The jury was further instructed: "If any statement, remark or argument of an attorney has no basis in the evidence, then you should disregard it." It has long been recognized that "a presumption exists that jurors do their duty in following proper instructions." *Matter of TRW,* 1985 OK 99, ¶ 27, 722 P.2d 1197, 1203 (citing *Hankins v. Brinkman,* 1967 OK 156, ¶ 15, 429 P.2d 985, 989).

¶ 18 In light of the trial court's instruction concerning the statements of counsel, this court must determine whether the statements "substantially influenced the verdict" or "denied ... a fair trial." *Smith,* 1977 OK 91, ¶ 5, 564 P.2d at 1011. Metro propounds that the information about Mr. Batman's native language being Arabic and his emigration from Syria to attend aviation school was not necessarily prejudicial and, in fact, was relevant to its theory of the case. Metro basically contended that a "language barrier," coupled with Mr. Batman's inexperience in the retail business, caused him to form a mistaken subjective understanding of the contract.

¶ 19 To be sure, the fact that Mr. Batman's native language was *not* English was relevant, but the details that his native language

was Arabic and he emigrated from Syria to attend flight school were facts whose "probative value is substantially outweighed by the danger of unfair prejudice." 12 O.S.2001 § 2403. It has long been recognized that "remarks [with a] tendency to appeal to racial prejudice" are "highly prejudicial." *Mashunkashey v. Brewer*, 1936 OK 354, ¶ 11 and ¶ 0, 58 P.2d 564, 566 and syllabus 6. In these post–9/11 times, the unnecessary emphasis upon a party's middle eastern origins poses the same serious potential for prejudice.

¶ 20 Finding that the unproven information was prejudicial is not dispositive, however. The ultimate question is whether the prejudicial information about Mr. Batman's middle eastern origins "substantially influenced the verdict" or "denied . . . a fair trial." In context of the record as a whole, we conclude it did not.

¶ 21 First, we again note that the information was mentioned only in opening statement and the court specifically instructed the jury that such statements were not evidence, and to disregard any statement that has no basis in the evidence. Second, and more importantly, the trial court also (1) generally instructed the jury that they "should not allow sympathy or prejudice to influence your decision" in Instruction No. 2, and (2) specifically instructed the jury "under our justice system the race, religion, national origin, or social status of a party or his/her attorney must not be considered by you in the discharge of your sworn duty as a juror" in Instruction No. 3.

¶ 22 Proper instructions by the trial court are normally sufficient to protect a party against potentially prejudicial matters. In *Cary by and through Cary v. Oneok, Inc.*, 1997 OK 60, ¶ 15, 940 P.2d 201, 205 (citation omitted), the Oklahoma Supreme Court observed "[a] jury will generally follow the court's instructions [concerning sympathy and prejudice] and decide a case based on the law presented." Under these circumstances, it does not clearly appear that the opening statement "substantially influenced the verdict" or "denied . . . a fair trial."

### III.

¶ 23 The remaining issues to be addressed on appeal concern the trial court's award of a prevailing party attorney fee to Metro pursuant to 12 O.S. Supp.2006 § 936. This statute authorizes an award of a reasonable attorney fee to the prevailing party in "any civil action" to recover on a "contract relating to the purchase or sale of goods, wares, or merchandise." On its face, the contract between Mr. Batman and Metro was a contract relating to the purchase or sale of goods, *i.e.*, fuel. Mr. Batman nonetheless contests Metro's right to recover an attorney fee for prevailing in this case on the ground that Mr. Batman was not seeking damages for breach of the sale contract, but was asking for accounting of money he allegedly overpaid on the contract. As we understand his position, he is arguing he did not bring a "civil action," but rather an equitable proceeding.

¶ 24 To decide this issue, this court must determine what the legislature meant by the term "civil action." More particularly, by using this term, did the legislature intend to exclude recovery of attorney fees if the suit to enforce rights and duties under a contract for the sale of goods presents an equitable claim rather than a legal claim? We conclude the legislature did not intend such a result.

¶ 25 The Oklahoma legislature has declared that "[t]here shall be one form of action to be known as a 'civil action.'" 12 O.S.2001 § 2002. The committee comment to § 2002 in the Oklahoma Statutes Annotated states this statute abolishes the distinction between actions at law and suits in equity, merging law and equity for procedural uniformity. Clearly, both legal and equitable claims are to be prosecuted in a "civil action."

¶ 26 In addition, the legislature has specially addressed contracts for the purchase or sale of goods in the Uniform Commercial Code, 12A O.S.2001 and Supp.2006 §§ 1–101 through 11–107. The UCC defines "'Action' in the sense of a judicial proceeding includes a recoupment, counterclaim, set off, *suit in equity*, and any other proceedings in which rights are determined." 12A O.S. Supp.2006 § 1–201(b)(1) (emphasis added).

¶ 27 Even if we accept Mr. Batman's contention that his underlying claim was for equitable relief in the nature of restitution or an accounting, *that claim* was pursued in a "civil action" which sought to "recover on" a contract relating to the purchase or sale of goods. *See Federal Financial Co. v. Grady County,* 1999 OK CIV APP 90, ¶ 10, 988 P.2d 908, 911. Accordingly, the trial court did not err in awarding Metro an attorney fee pursuant to § 936 for prevailing on Mr. Batman's claim, whether the claim is considered legal or equitable.

¶ 28 Mr. Batman alternatively argues that the amount of the attorney fee awarded to Metro was excessive. Mr. Batman first propounds that the trial court erred in awarding the attorney fees incurred by Metro to defend his request to litigate this case as a class action. Mr. Batman proposed a class of all retailers who purchased fuel from Metro under similar contracts. Mr. Batman points out that the statute governing class action procedure does not provide for attorney fees to either party based on the outcome of the class request, whether successful or not.

¶ 29 In the event this court holds that a prevailing party can recover for services to establish or defeat the class, Mr. Batman argues that Metro did not timely seek such fees after the order disallowing the class became final. He contends that Metro's right to recover that portion of its attorney fees was time-barred and that this court should deduct that portion of attorney fees from the prevailing party award.

¶ 30 Lastly, Mr. Batman contends that the award of almost eighty thousand dollars in attorney fees was clearly unreasonable and excessive in relation to the amount in controversy—$15,701.35. For the reasons that follow, we reject each of these challenges to the amount of the prevailing party attorney fee awarded by the trial court.

¶ 31 "What constitutes a reasonable attorney fee is a matter addressed to the sound discretion of the trial court to be decided based on various factors." *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.,* 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046 (citations omitted). "[A] judgment awarding attorney fees will not be reversed absent an abuse of discretion." *Id.* "As a general matter, an abuse of discretion review standard includes appellate examination of both fact and law issues." *Id.* "[A]buse occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision." *Id.*

¶ 32 The *Tibbetts* case recognizes that a class can recover a prevailing party attorney fee when it prevails in the type of case for which a prevailing party attorney fee is authorized by statute. In regard to prevailing party attorney fees, however, a successful defendant must be treated equally as a victorious plaintiff. *Professional Credit Collections v. Smith,* 1997 OK 19, ¶ 14, 933 P.2d 307, 311.

¶ 33 To be entitled to recover a prevailing party attorney fee, the party must be successful in its quest for some affirmative relief. *Id.* at ¶ 10, 933 P.2d at 310. In the *Professional Credit* case, the Oklahoma Supreme Court ruled that a defendant who was successful in vacating a default judgment in a suit on an open account was entitled to an attorney fee under § 936 for prevailing on the motion to vacate. *Id.*

¶ 34 The Supreme Court further ruled that the plaintiff's subsequent dismissal of that defendant, without either party obtaining a judgment on the open account claim, did not defeat the defendant's right to recover for prevailing on the motion to vacate. The Supreme Court observed that "[t]he definition of a prevailing party cannot narrowly be confined to one who obtains a *judgment.*" *Id.* at ¶ 11, 933 P.2d at 311. "The operative factor under § 936 is *success,* not the particular stage at which success is achieved." *Id.* (footnote omitted).

¶ 35 In granting or denying a request to certify a class, we believe the trial court is granting the successful party affirmative relief on that issue which will support recovery of an attorney fee for achieving such success, in the event that the underlying claim is likewise terminated in favor of that same party by judgment, dismissal or otherwise. Stated another way, a plaintiff class would be entitled to recover for legal services that

resulted in the successful certification of the class upon termination of the underlying claim in favor of the class. Conversely, a defendant would be entitled to recover for legal services that resulted in defeating certification of the class upon termination of the underlying claim in favor of the defendant.

¶ 36 The Louisiana Court of Appeal reached a similar conclusion in the case of *Megatrend Telecommunications, Inc. v. Rees Marine, Inc.,* 673 So.2d 1098, 1099 (La.Ct. App.1996). In this case, the court recognized that the defendant would be entitled "to recover ... legal fees and costs incurred in 'defending against and obtaining the dismissal of [a] class action'" under the prevailing party attorney fee provision in the parties' contract. However, the court reversed an award of such a fee that was entered prior to termination of the breach of contract dispute between the parties, because "the trial court has not yet determined which party is the prevailing party on the main contractual issues." *Id.* at 1100. In other words, the defendant's request to recover for defeating the class was premature and ultimately depended upon prevailing on the underlying claim.

¶ 37 In the case at hand, Metro obtained affirmative relief in its favor on Mr. Batman's class certification request and ultimately prevailed on Mr. Batman's claim to "recover on" the parties' contract for the sale of goods (fuel). As such, Metro was entitled to recover for the legal services that produced the affirmative relief on the class certification request as part of its recovery of attorney fees for being the prevailing party on the underlying claim. Accordingly, the trial court did not err by including fees incurred by Metro to defeat Mr. Batman's class certification request in the total prevailing party attorney fee.

¶ 38 In addition to finding that Metro could recover its attorney fees to defeat the class as part of its prevailing party attorney fee, we also find Metro properly waited until the termination of the underlying claim in its favor before seeking recovery of the attorney fees incurred to defeat the class request. While success on the class request is the type of affirmative relief that entitles a party to receive attorney fees, such affirmative relief is not sufficient to support recovery independent of or prior to the final determination of the prevailing party on the underlying claim. Metro timely filed its request for a prevailing party attorney fee, including fees incurred to defeat the class, within thirty days of the judgment determining Metro was the prevailing party on Mr. Batman's underlying claim, as provided in 12 O.S. Supp.2006 § 696.4(B).

¶ 39 Lastly, we address Mr. Batman's general challenge that the award of $79,525 is excessive when compared to the stipulated amount in controversy of $15,701.35. It is well settled that the "[r]easonableness of attorneys' fees is a question for the ... trial judge, as the trier of fact, [taking into] account the fact[ors] specified in *State ex rel. Burk [v. City of Oklahoma City,* 1979 OK 115, 598 P.2d 659], including a reasonable hourly rate times a reasonable number of hours." *Arkoma Gas Co. v. Otis Engineering,* 1993 OK 27, 849 P.2d 392, 394.

¶ 40 The trial court's order awarding attorney fees to Metro states that the court considered "the testimony of witnesses and ... applicable case law, including *State ex rel. Burk versus* [v.] *City of Oklahoma City,* 598 P.2d 659 (Ok.1979)." This review led the court to conclude that "a majority of the time spent by [Metro's] counsel on all issues to be reasonable and necessary under the facts and circumstances of this case."

¶ 41 The order further reflects that the award covered attorney fees for "trial, appeal and certiorari-related services." Again, the appeal and certiorari-related services were for (1) Metro's successful appeal of the summary judgment, (2) Mr. Batman's unsuccessful cross-appeal of the denial of class certification, and (3) Mr. Batman's unsuccessful request for certiorari review of these decisions by the Oklahoma Supreme Court.

¶ 42 The trial court also concluded that "[t]he fees incurred by either counsel pertinent to a request to certify a class are properly awarded to the prevailing party." The court determined a separate amount for all trial services, excluding certification issues

($61,425.00); for trial services related to certification issues ($7,000); and for all services for "all issues" on appeal ($11,100).

¶ 43 In review of the entire record of this case, this court agrees with the trial court's characterization of this case as "protracted, hard-fought litigation." Given the trial court's thorough and thoughtful consideration of the record and applicable law in determining an appropriate attorney fee to be awarded Metro, we conclude that the trial court did not abuse its discretion awarding Metro a prevailing party attorney fee of $79,525 "for trial, appeal, and certiorari-related services."

¶ 44 In conclusion, we find no error in either the judgment on the jury verdict or the award of attorney fees as alleged by Mr. Batman. Accordingly, the judgment on the jury verdict and award of attorney fees are AFFIRMED.

GABBARD, P.J., and GOODMAN, J., concur.