LEWIS F. GRAFFLIN and THE UNITED STATES FIDELITY AND GUARANTY COMPANY *vs.* THE STATE, Use of THOMAS C. C. RUCKLE, a Lunatic, by His Committee and Next Friend, THE CONTINENTAL TRUST COMPANY.

*Principal and Surety—Effect of Recovery Against Principal—Liability*
*of Surety on Bond of Committee of Lunatic—Failure to Pay Money*
*Into Court as Ordered—Equitable .Defenses—When Tender of Mort-*
*gage Debt Extinguishes Lien—Evidence.*

A recovery against the principal debtor in a bond, even though the sureties are not parties to the suit, is *prima facie* binding on the sureties, and they can only relieve themselves from the effect of the recovery against the principal by showing that the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was really entitled to recover, or that he was not entitled to recover at all.

A decretal order directing the committee of a lunatic to bring into Court a sum of money is *prima facie* evidence that the money was owing to the lunatic's estate in a suit against the surety on the bond of the com-

mittee, although the surety had no notice of the proceedings in which the order was passed.

A suit on the bond of the committee of a lunatic may be maintained without the prior passage of an order of Court authorizing the suit to be instituted.

In order to extinguish the lien of a mortgage by a tender of the amount due at maturity and its refusal by the mortgagee, the tender must be made by a person who has a right to pay the debt, such as the debtor himself, or the holder of the title to the property mortgaged, or the holder of some subsequent lien having an equity of redemption. The tender of the debt by a stranger does not extinguish the lien of the mortgage.

In an action on the bond of a lunatic's committee, who has failed to comply with an order of an equity Court requiring him to bring into Court a sum of money belonging to the lunatic, the proceedings in that Court under which the committee's liability was established, and an auditor's report showing the amount of the lunatic's estate, which went into his hands, are admissible in evidence.

The committee of a lunatic was authorized by a Court of equity which appointed him to invest $3,000 belonging to the lunatic in a *first* mortgage on designated property. The committee invested that amount in a *second* mortgage on the property. Thereupon the equity Court directed the committee to bring into Court the sum of $3,000 and removed him from the trust. Upon his failure to comply with this order the substituted committee of the lunatic brought this action against him and the surety on his bond, conditioned for the faithful performance of the trust reposed in him. The surety pleaded by way of equitable defense that upon the maturity of the first mortgage, it, the surety, tendered the amount of the debt to the mortgagee who refused it; that subsequently, but after the passage of the order directing the committtee to bring the $3,000 into Court, the surety paid the first mortgage and caused the same to be released, so that the second mortgage to the committee became a first lien on the land; that the said order to the committee was passed without notice to the surety, and was not a final order, and not such as the surety could have appealed from; that the surety was never called upon by the equity Court to pay the $3,000 and the pending suit against it was not authorized by that Court, and that the surety is ready to pay the money into the equity Court on a proper order. *Held*, that a demurrer to this plea was properly sustained, since the facts alleged do not show that the lunatic's estate is not entitled to recover the amount from the defaulting committee; that the order requiring the committee to bring the money into Court, imposed upon him a duty which was within the terms of the bond and not having been complied with he did not faithfully perform the trust reposed in him, and it makes no difference that the unauthorized second mortgage became a first lien on account of subsequent events.

*Held,* further, that the evidence is legally sufficient to entitle the plaintiff to recover from the surety the amount owing by the committee to the lunatic's estate, and the facts relied upon by the surety in the plea are not sufficient to overcome the liability of the committee established *prima facie* by the order of the equity Court.

Appeal from the Court of Common Pleas (SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*J. Kemp Bartlett* (with whom were *Isidor Rayner, Chas. Lee Merriken* and *R. Howard Bland* on the brief), for the appellants.

*George R. Gaither* and *Lewis McKim Kines* (with whom was *Leon E. Greenbaum* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This appeal brings up a record from the Court of Common Pleas. It appears that in January, 1897, Lewis F. Grafflin, one of the appellants, was appointed by Circuit Court No. 2, of Baltimore City, committee of the estate of Thomas C. C. Ruckle, who had been adjudged by the inquisition of a jury to be a lunatic: That Grafflin thereupon gave bond to the State of Maryland in the penalty of thirteen thousand dollars with the United States Fidelity and Guaranty Company, a body corporate, as surety, conditioned for the faithful performance of the trust reposed in him by the decree which appointed him, or which might "be reposed in him by any future decree or order in the premises:" That on October the 27th, 1898, Grafflin, the committee, secured an *ex parte* order from the Circuit Court permitting him to invest the sum of three thousand dollars belonging to the lunatic, in a *first* mortgage on a certain parcel of land lying in Baltimore County: That Grafflin, instead of complying with the requirements of the last-named order, took, on October the twenty-eighth—(the day following the date of the order)—a *second* mortgage on the designated property for three thousand dollars, though

there was then outstanding, as a first lien on the property, a prior mortgage securing the payment of a debt of fourteen hundred dollars: That Grafflin did not in fact invest the sum of three thousand dollars in the second mortgage, but prior to the date when he obtained the order authorizing the investment, he had advanced to the mortgagor a considerable part of the sum, and that he retained fourteen hundred dollars of the three thousand dollars with which to pay off the first mortgage: That he alleges he was taken sick before he could pay off the first mortgage, and during his sickness was robbed of the fourteen hundred dollars so retained: That on February 14th, 1901, the lunatic by his next friend Oliver J. Whildin, filed a petition in Circuit Court No. 2 calling to the attention of the Court, amongst other things, the fact that Grafflin had disregarded the order of October, 1898, and had invested the lunatic's money in a *second* mortgage, and that thereupon an order was passed requiring Grafflin to show cause on or before March eighth, 1901, why he should not be compelled to bring into Court the sum of three thousand dollars which he had been previously authorized to invest in a first mortgage, but with which authorization he had not complied: That Grafflin showed cause which was deemed by Circuit Court No. 2 wholly insufficient; and that on June 14th the Circuit Court passed a decretal order removing Grafflin from his trust, and appointing the Continental Trust Company in his place, and directing him to bring into Court on or before the twenty-fifth day of June the sum of three thousand dollars with interest from October 27th, 1898: That Grafflin failed to bring into Court the money mentioned in the Court's order, and thereafter on October the twelfth the pending suit was brought against Grafflin and the United States Fidelity and Guaranty Company for the use of the lunatic on the bond given by Grafflin at the time of his appointment. To the declaration which assigned as breaches of the bond the failure of Grafflin to bring the three thousand dollars into Court, and his neglect to account for a further sum of thirteen hundred and odd dollars, the defendants filed several pleas, and later on the Fi-

delity and Guaranty Company interposed a further plea by
way of defense on equitable grounds, which raises the import-
ant and the main question in the case. The plea was demurred
to, the demurrer was sustained; and then the same question
was again presented in an offer of testimony which, upon ob-
jection, was excluded, and finally was for the third time in-
sisted on in the defendant's fourth prayer which was rejected.

The plea by way of defense on equitable grounds is quite
lengthy and only the substance of it need be stated. It alludes
to the order of October, 1898, authorizing the investment of
three thousand dollars in a first mortgage; it avers that a
mortgage was executed, and that the Fidelity and Guaranty
Company learned on January 14th, 1901, that a prior mort-
gage for fourteen hundred dollars existed on the property and
thereupon the company, before any action was taken on behalf
of the lunatic against Grafflin and at least nine months before
the institution of this suit, commenced proceedings to acquire
title to the fourteen hundred dollar first mortgage, and on the
maturity of the said first mortgage made a tender to the
assignee and holder thereof, of all sums due thereon, which
tender was refused; that the company did subsequently ac-
quire the first mortgage, and on July the tenth, 1901, caused
the same to be released whereby the three thousand dollar
mortgage became and still is a first lien on the land "the same
in every respect as if said prior mortgage of fourteen hundred
dollars had never been executed:" That the order requiring
Grafflin to bring three thousand dollars into Court was passed
without the knowledge of or any notice to the defendant com-
pany; and that it was obtained at a time when the company
was engaged in the litigation which resulted in procuring the
assignment and the ultimate release of the first mortgage; that
the order to bring the money into Court was not a final order,
and is not such as the defendant could have appealed from
even if it had been a party to the proceedings with notice. The
plea further alleges that the defendant company was never
called on by Circuit Court No. 2 to pay the three thousand
dollars into Court; that it has never had an opportunity to

show to said Court the purchase and release of the first mortgage; that the pending suit was not authorized by Circuit Court No. 2, nor was it brought in the name of the substituted committee in pursuance of any order of Court, but was brought for the use of the lunatic himself. And finally that the defendant company is ready, upon proper order, to pay into Circuit Court No. 2 the sum of three thousand dollars with interest thereon to await the decision of said Court upon the question of the company's liability under the aforegoing facts; and that by reason of those facts the plaintiff is not entitled to maintain this suit as to said sum of three thousand dollars.

Does this plea set up a valid defense on the part of the surety to the suit on the bond? Assuming for the purposes of this discussion, and for those purposes only, that it is competent for a Court of law in a suit on a delinquent committee's bond to inquire, at the instance of a surety on that bond, into the propriety of an order or decree requiring that committee to bring into the Court under whose supervision he is administering his trust, the funds which form part of the lunatic's estate; do the facts set out in the plea show that the Circuit Court had no jurisdiction to pass the order, or that it committed an error in passing it? In other words, do those facts indicate that the order was wrong when passed? because if it was right *when passed* subsequent events could not make it wrong. Now, the plea admits that the Committee Grafflin had been authorized to invest the three thousand dollars on a *first* mortgage and it also admits that in disregard of the Court's order a *second* mortgage was taken. Those admissions, in effect and in fact, concede that Grafflin was in default, that he had failed to comply with the Court's order, and for that default and failure was removed from his fiduciary position and was required to bring the money into Court. There can, of course be no dispute as to the power of a Court of equity to remove a defaulting committee, or as to its authority to require him to bring into Court the trust money which he has neglected to invest according to the instructions which the Court has given him. The effect of the order which was

passed by Circuit Court No. 2 on June 14th, 1901, in addition
to its operation as a rescission of the antecedent order author-
izing an investment in a first mortgage, was to impose a duty
on the committee which was explicitly within the terms of the
bond; and as that order bound him to bring the money into
Court his surety became liable to the lunatic's estate for the
sum which the committee failed to pay into Court, inasmuch
as by reason of that failure the committee did not "well and
faithfully perform the trust reposed in him" by a "decree or
order in the premises." The order of June 14th fastened a
liability on Grafflin and that liability is *prima facie* binding on the
surety. The principle is well settled in this State that a re-
covery against a principal in a bond, even though the sureties
are not parties to the suit is *prima facie* binding on the sure-
ties, and they can only relieve themselves from the binding
effect of the recovery against the principal by showing that
the amount recovered was in excess of the amount which the
plaintiff in the judgment or decree was really entitled to re-
cover, or that he was not entitled to recover at all. *Parr* v.
*State, &c.,* 71 Md. 220; *Iglehart* v. *The State, &c.,* 2 G. & J.
235; *Owens* v. *Collinson,* 3 G. & J. 35; *Roberts, &c.,* v. *Woven
Wire Mattress Co.,* 46 Md. 385.

Now, the facts relied on in the plea by way of defense on
equitable grounds to repel or rebut the *prima facie* case made
against the surety by the decretal order of June 14th, 1901,
against Grafflin, are simply these, viz., that, first, the tender by
the Guaranty Company to the holder of the first mortgage
of the amount due thereon extinguished the first mortgage
before the proceedings to compel Grafflin to bring the money
into Court were commenced; secondly, that the release of the
first mortgage on July 10th, 1901, advanced the three thou-
sand dollar mortgage to the position of a first mortgage and
thus gratified the requirements of the order of October, 1898,
which authorized the investment of three thousand dollars on
a first mortgage; thirdly, that the order of June 14th was not
a final and not an appealable order; fourthly, that the Circuit
Court did not authorize the institution of the pending suit;

and finally, that the Guaranty Company is ready, upon a proper order, to bring into Court the sum of three thousand dollars with interest to await a decision of the company's liability under the facts recited in the plea.   Not one of these facts tends to show that the sum of money which the Court ordered Grafflin to bring into Court was in excess of the amount which the lunatic's estate was entitled to recover from the defaulting committee; and much less do all of them combined, tend to show that the estate was not entitled to recover at all against Grafflin.   In the first place the plea does not aver that the Guaranty Company was the owner of the equity of redemption in the mortgaged property, or that the company occupied any other relation to the property or the liens upon it that would entitle it to tender to the holder of the first mortgage the amount due thereon.   The plea sets up simply the fact that the Guaranty Company, a mere stranger, tendered to the holder of the first mortgage the amount due thereon, whereby upon the holder's refusal to accept payment, the lien of the first mortgage was extinguished and the second mortgage thereupon became the first mortgage.   It may be conceded that if there is a tender of the mortgage money at the time and in the manner prescribed in the condition of the mortgage, and the mortgagee refuses to receive it, the condition is complied with and the mortgagee must lose his security upon the land, which was merely collateral to the debt; although the mortgagor may be still liable for the money. *Merritt* v. *Lambert*, 7 Paige, 344; 28 *Am. & Eng. Encyl. L.*, 13.   But to produce such a result the money really due must be tendered by a person having a right to make the tender, because a valid tender can only be made by the person, or the agent of the person, who has a right to pay the debt, as the debtor himself or his representatives, or the holder of the title to the estate or property on which the debt is a lien, or the holder of some subsequent lien having an equity of redemption; *a tender by a stranger is not good.*   28 *Am. & Eng. Ency. L.*, 34.   The Guaranty Company was merely a surety on the bond of the lunatic's committee.   It did not owe the mortgage debt upon

the property, it did not own the property and had no interest of any kind in it.    It was a total stranger.    It could not, therefore, as a volunteer make a valid tender of the money due on the first mortgage, and the tender which it did make had no effect of any kind on the lien or priority of that mortgage.    That portion of the plea which relied on the alleged tender presented no bar to the plaintiff's right to recover.

*Secondly.* The release of the first mortgage on July 10th, or nearly a month after the order of June 14th, was passed, does not show that the latter order was erroneous when passed. The money was required to be brought into Court because the committee had disobeyed the Court's decree of October, 1898.    If the subsequent release of the first mortgage, gave to the investment the security which was originally contemplated, perhaps upon an appropriate application to Circuit Court No. 2 it might have modified the order of June 14th, and might have sanctioned the investment though not made in the first instance according to the terms prescribed by it. But that was a matter for the equity Court having the management of the lunatic's estate to determine, and it was not a subject over which a Court of law in a suit on the committee's bond had any jurisdiction.    The release of the first mortgage presented no defense to the suit on the bond.

*Thirdly.* It is not perceived how the fact that the order of June 14th, 1901, was not final and appealable can in the most remote way reflect upon its propriety or correctness.    Nor do we see how the circumstance that the suit on the bond was instituted without first obtaining an order of Circuit Court No. 2, can affect the right of the plaintiff to recover, if a valid cause of action exists.    The offer by the Guaranty Company to bring the money into Court to await the final result of the pending action interposes no legal obstacle to the prosecution of the suit.

Inasmuch, then, as the facts relied on in the plea furnished no defense, the trial Court did right in sustaining the demurrer to that plea; and for the same reason its ruling in the fifth exception excluding evidence of the facts stated in the plea, and

its ruling in the sixth exception rejecting the defendant's fourth prayer founded on the same facts, were both correct.

The first exception was taken to the ruling of the Court in admitting in evidence the petition of the lunatic by his next friend, Oliver J. Whildin, the answer of Grafflin thereto and the decree thereon of June 14th. These were the proceedings under which the liability of Grafflin was established. They were therefore admissible against him and against his surety.

The second exception was taken to the ruling of the Court in admitting in evidence an auditor's report showing the amount which went into Grafflin's hands from the sale of certain securities of the lunatic. Inasmuch as a part of those amounts are conceded to be in the possession of Grafflin and for which he ought to account to the plaintiff there was clearly no error in permitting the evidence to go to the jury.

The third exception brings up the rulings of the Court in refusing to allow the defendant to show that the first mortgage was released *after* the order of June 14th, had been passed. We have considered that matter in disposing of the demurrer. There was no error in the ruling.

The fourth exception was taken to the ruling on the demurrer. That is not the proper method to bring up such a question, but as it appears in proper form in the docket entries we have already considered it.

The defendant's first prayer, to the effect that there was no legally sufficient evidence to entitle the plaintiff to recover was properly rejected. What we have said in dealing with the demurrer is all that need be said in disposing of this prayer. The second prayer was withdrawn. The third prayer was rightly rejected. The proposition which it presented was not involved in the case.

The omission from the declaration of the name of the substituted committee, the Continental Trust Company, was remedied by an amendment made with leave of the trial Court.

We have gone into all the questions raised on the record, and as we have discovered no error in the rulings excepted to, the judgment, which was in favor of the plaintiff for the

three thousand dollars with interest plus a sum in cash con-
ceded to be in Grafflin's hands, must be affirmed.

> *Judgment affirmed with costs above
> and below.*

(Decided February 13th, 1906.)