George IVEY, Plaintiff in Error,

v.

HENRY'S DIESEL SERVICE, INC., a domestic corporation, Defendant in Error.

No. 41011.

Supreme Court of Oklahoma.

Sept. 27, 1966.

Wendell L. Evans, Jr., Lebanon, Mo., Robert E. Lavender, Bassmann, Gordon, Mayberry & Lavender, Claremore, for plaintiff in error.

Bruce M. Townsend, Smith & Townsend, Tulsa, for defendant in error.

PER CURIAM.

The parties occupy the same relative position in this Court as they did in the trial court and will, therefore, be referred to herein as they appeared in the trial court. An additional defendant in the action, Hensel Pearcy, made no answer or appearance in the court below and is not a party to this appeal.

On October 18, 1960, as security for a $2800.75 promissory note due the plaintiff, George Ivey, Hensel Pearcy executed a chattel mortgage in favor of the plaintiff upon a 1956 Autocar tractor and a Dorsey trailer. Although the terms of the promissory note stipulated final payment on April 18, 1962, and demand was made upon Pearcy, no payment was made by that date or at any time thereafter.

Sometime during or shortly prior to March 1963 the trailer and tractor subject to the chattel mortgage were involved in an accident near Pueblo, Colorado, necessitating certain repair work on the tractor. Hensel Pearcy entered into an agreement with the defendant, Henry's Diesel Service, Inc., of Tulsa, Oklahoma, whereby the defendant would go to Pueblo to repair the tractor so that it could be towed, and then tow the same to Tulsa for further repair work. It was agreed that the charge for this service would be $300.00.

During the latter part of March 1963 the plaintiff learned that the tractor was in the possession of the defendant. Accompanied by Hensel Pearcy, the plaintiff went to the defendant's place of business where he talked with Henry Dunlavy, president of the defendant corporation. During the conversation between the plaintiff and Dunlavy, the plaintiff inquired what the defendant would charge for the further repair work that was needed on the tractor. The plaintiff testified that during this conversation and in the presence of Dunlavy he also told Pearcy that he did not intend to loan him any more money on the truck.

Approximately one week later, after the plaintiff found out that Pearcy could not secure any money with which to pay off the note and mortgage, the plaintiff returned to the defendant's place of business in Tulsa in order to pick up the tractor. The plaintiff testified further (1) that he told Dunlavy that he had a chattel mortgage on the tractor, (2) that he offered to pay the defendant corporation $300.00 in cash, which at that time was all that the defendant claimed was due it for the services rendered upon the vehicle, and (3) that the defendant, through its president, Henry Dunlavy, refused to relinquish possession of the vehicle to the plaintiff. Contrary to the testimony of the plaintiff, Dunlavy testified that at no time did the plaintiff tell him that he had a chattel mortgage on

the truck, and that he never did explain to him what right he had to demand the vehicle. Dunlavy further testified that Hensel Pearcy gave him explicit instructions not to let the plaintiff have possession of the tractor without Pearcy's express permission.

On May 1, 1963, in the Court of Common Pleas, Tulsa County, State of Oklahoma, the plaintiff brought an action to replevin the tractor and trailer, for judgment on the promissory note, and to foreclose the chattel mortgage thereon. In its answer and cross-petition the defendant alleged that it was entitled to the sum of $300.00 for performing certain work upon the tractor and towing it from Pueblo, Colorado, to Tulsa, Oklahoma, $60.00 for storage of the tractor, and an attorney's fee. The plaintiff's reply alleged that the defendant, if it ever had a lien on this chattel, waived the same by refusing to accept the plaintiff's lawful tender of payment of the full amount claimed by the defendant, which tender was made prior to instituting the present suit. The case was tried before a jury, and at the close of the evidence, pursuant to the defendant's request, the trial court directed a verdict against the plaintiff, George Ivey, for the sum of $360.00 for service, towing, and storage, plus a $250.00 attorney's fee, and the costs of the action. From an order of the trial court overruling plaintiff's motion for a new trial, the plaintiff appeals to this Court.

In the four propositions advanced by the plaintiff in his brief, there are, essentially, only two assignments of error. For his first assignment of error that will be discussed the plaintiff urges that the trial court erred in allowing the successful party to recover an attorney's fee from the other party. For his second assignment of error the plaintiff contends that the trial court erred by directing a verdict for the defendant. The plaintiff argues that when he tendered the full amount of the debt claimed by the defendant to the defendant's agent and explained to the agent his legal right to make such tender, the de-

fendant's lien was completely discharged by the defendant's refusal to accept the tender.

In the first assigned error to be discussed the plaintiff's argument is based entirely on Voelkle v. Sisemore, Okl., 338 P.2d 1080 (1959) and its alleged interpretation of the pertinent Oklahoma statute, Title 42 O.S. 1961, § 176. His argument seems to be that the defendant was not entitled to recover an attorney's fee since he was not the primary debtor on the note but merely a claimant under a garageman's lien. Such an argument finds no support in Voelkle v. Sisemore, supra, or in Title 42 O.S.1961, § 176, which reads:

"In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

Clearly, the statute applies to any action brought to enforce *any* lien, not just to an action against the primary debtor on a note.

While this Court in Voelkle v. Sisemore, supra, did not allow the plaintiff the recovery of attorney's fee, this opinion concerned whether or not the plaintiff should be allowed to recover an attorney's fee against the incidental defendants after he had already been awarded an attorney's fee against the principal defendant. This Court recognized in that opinion that Title 42 O.S.1961, § 176, was intended to allow recovery of attorney's fee by the successful principal party against the other principal party. In Commercial Discount Co. v. Midwest Chevrolet Co., Okl., 301 P.2d 356 (1956) we held:

"In a replevin action where plaintiff and defendant each affirmatively assert a first lien on the property and claim right of possession, the party for whom judgment is rendered is entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action."

Accordingly, the plaintiff's contention must be rejected, and we conclude that in this action the successful party is entitled to recover a reasonable attorney's fee, to be taxed as costs in the action.

Turning to the plaintiff's other contention, the one to which three of his four propositions are devoted, the question is raised: What acts are required of one holding a subsequent lien to redeem a chattel from one having a superior lien? It should be noted at this point that both parties agree that the lien created by the plaintiff's note and mortgage was secondary to the defendant's lien since the plaintiff's mortgage had not been filed for record in Oklahoma prior to the time that the defendant performed the labor upon the tractor. The chattel mortgage involved in the case at bar was entered into prior to the effective date of the provisions of the Uniform Commercial Code, and consequently only the laws applicable at the time of the transaction will be discussed.

In answer to the question raised by the plaintiff, the Oklahoma statutes contain the following pertinent provisions:

42 O.S.1961, § 18—"Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

42 O.S.1961, § 19—"One who has a lien, inferior to another upon the same property, has a right:

1. To redeem the property in the same manner as its owner might, from the superior lien; and,

2. To be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby."

42 O.S.1961, § 20—"Redemption from a lien is made by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to

which the holder of the lien is entitled for delay."

■ This Court has followed the rule that the unconditional tender to a creditor of the amount due on a debt acts to extinguish the lien on personal property pledged to secure its payment (although the debt may remain). First National Bank of Davis v. Britton, 185 Okl. 566, 94 P.2d 896 (1939); Bardon Loan Co. v. Boggs, 159 Okl. 196, 14 P.2d 947 (1932); Knudson v. Fenimore, 69 Okl. 3, 169 P. 478, L.R.A. 1918C, 181 (1916); Smith-Wogan Hardware & Imp. Co. v. Bice, 34 Okl. 294, 125 P. 456 (1912). However, in relation to the above stated rule we set forth the following condition in Knudson v. Fenimore, supra:

"* * * Under this harsh rule the tender must be made by the proper party, and it necessarily follows that if made by an actually authorized party, the tenderee is entitled to know that fact at the time the tender is made; otherwise, how could he possibly, in justice, be bound by the tender? We, therefore, lay this down as a positive rule that at the time the tender is made, if not made by the original mortgagor, it must clearly and unequivocally be made known to the tenderee that the tenderer is a person having the legal right to make the tender * * *."

Quoting from Grafflin v. State to Use of Ruckle, 103 Md. 171, 63 A. 373 (1906), this Court also stated in Knudson v. Fenimore, supra:

"'In order to extinguish the lien of a mortgage by a tender of the amount due at maturity and its refusal by the mortgagee, the tender must be made by a person who has a right to pay the debt; such as the debtor himself, or the holder of the title to the property mortgaged, or the holder of some subsequent lien having an equity of redemption. The tender of the debt by a stranger does not extinguish the lien of the mortgage.'"

The defendant's position as a bailee is not infringed upon by these rules. The duty

of the bailee to return the property to the bailor is necessarily conditioned on the premise that no one else has a superior right to the property. 15 O.S.1961, § 447; Eisiminger v. Dinwiddie, 170 Okl. 396, 40 P.2d 1029 (1935). The bailee is also entitled to be indemnified against any claim of the bailor by the person asserting the superior right to the property. 15 O.S.1961, § 451.

It seems clear that in the case at bar the plaintiff could have redeemed the tractor from the lien claimed by the defendant by tendering the full amount claimed by the defendant and by communicating clearly and unequivocally his interest in the truck and his right to pay the debt. The evidence was undisputed that the plaintiff did tender to the defendant the full amount of the lien upon the truck claimed by the defendant at the time the tender was made. Thus, the only question before the trial court was whether the plaintiff established clearly and unequivocally to the defendant his right to pay the debt. On this particular point there was conflicting evidence.

As has been stated above, the plaintiff testified that he informed the agent for the defendant that he had a chattel mortgage on the truck at the time that he tendered the amount due, and he further testified that he talked with the mortgagor in the presence of the defendant's agent about not being able to let him borrow any more money on the truck. The defendant through its agent denied that the plaintiff ever made any representation that he had a chattel mortgage on the truck.

■ Since there was conflicting evidence on a vital issue of fact, the judge in the trial court erred in directing a verdict for the defendant. This Court has repeatedly stated that when passing on a motion for directed verdict or a demurrer to the evidence the trial court should consider as true all the evidence favorable to the party against whom the demurrer or motion is directed, together with all inferences rea-

sonably to be drawn therefrom, and should disregard all conflicting evidence favorable to the demurrant or person moving for a directed verdict. Hampton v. Danks, Okl., 387 P.2d 609 (1964); Sisler v. Whitten, Okl., 393 P.2d 497 (1964); Price v. Smith, Okl., 373 P.2d 242 (1962); Chuck's Bar v. Wallace, 198 Okl. 152, 176 P.2d 484 (1947). In Allied Reserve Life Ins. Co. v. Cunningham, Okl., 355 P.2d 564 (1960), Syllabus 4, this Court held:

"A motion for directed verdict or demurrer to evidence should not be sustained unless there is an entire absence of proof tending to show a right to recover; and in passing on the same the trial court must consider as true, all of the evidence favorable to the party against whom motion or demurrer is directed, together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the movant."

■ We have carefully examined the record, and hold that the evidence introduced at the trial and the legitimate inferences to be drawn therefrom justify the submission of the cause to a jury. Wentz v. Grimshaw, Okl., 271 P.2d 728 (1954).

Reversed and remanded with directions to grant plaintiff a new trial.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.

This Court acknowledges the services of TOM HIERONYMUS who with the aid and counsel of BRYAN BILLINGS and W. HOWARD BOATMAN, as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.