**Olen WILSON, Appellant,**

v.

**MID–CONTiNENT CASUALTY COMPANY, Appellee.**

**No. 44657.**

Supreme Court of Oklahoma.

May 15, 1973.

Ivester, Ivester & Ivester, Sayre, for appellant.

Dale Jarvis, Weatherford, for appellee.

WILLIAMS, Vice Chief Justice.

This is an appeal by plaintiff from verdict and judgment for plaintiff in the amount of $2500 in his action against the defendant insurance company to recover for an admitted fire loss. The only substantial issue of fact was whether the insurance coverage under the circumstances was $6000 or $2500. By their verdict, the jury decided this issue in favor of defendant.

Plaintiff, a Beckham County business man, had a farming operation and also operated a trucking business, hauling mostly cotton seed and baled cotton. His insurance needs for both the farming and trucking operations were handled by the Mike Neff Insurance Agency of Sayre, and had been for several years. This agency represented, among others, the defendant Mid-Continent Casualty Company, with authority to bind the company. Plaintiff, whose trucking operations were seasonal, usually did business with the insurance agency by telephone, and usually talked with Mrs. L., a long-time employee in the office. Plaintiff understood and expected that any changes in his insurance coverage which he directed Mrs. L. to make by phone would be effective as of the date of the phone call, and that an additional premium or return premium would be charged or

credited, as the circumstances required, as of that time.

The narrow issue of fact for the jury's determination was the question of whether, on December 5th, plaintiff called Mrs. L. and directed her to reduce his cargo coverage from $6000 to $2500. On that question, the evidence was in sharp and irreconcilable conflict.

For the defendant, Mrs. L. testified directly and unequivocally that plaintiff called her at the office on December 5th and directed her to delete from the policy one of his truck tractors which he had sold and to reduce the cargo coverage from $6000 to $2500 because the cotton season was "about over". She then wrote the company in Tulsa with directions to delete the vehicle and reduce the cargo coverage "effective December 5th". There was uncontradicted evidence that the company received the letter on December 6th and on December 10th, issued and mailed to the Mike Neff Agency an endorsement effective December 5th, deleting the truck tractor and reducing the cargo coverage as directed. The endorsement bore the facsimile signatures of the president and secretary of defendant company; see 36 O.S.1971, § 3618. It also recited a return premium of $410, computed as of the effective date. The endorsement was received by the agency on December 11th, countersigned, and forwarded to plaintiff by mail. Plaintiff admittedly received it on December 12th, but did not read it until the morning of December 13th. His fire loss occurred that afternoon.

Plaintiff, although admitting that he told Mrs. L. on December 5th to delete the truck tractor, unequivocally denied telling her to reduce the cargo coverage. He said that when, on the morning of December 13th, he read the endorsement making both changes, he tore it up and threw it into a waste-basket.

It is well settled that a verdict based on conflicting evidence will not be disturbed on appeal if there is any competent evidence to support it; Skogsberg v. First Natl. Bank, Okl., 439 P.2d 957; California Oil Co. v. Davenport, Okl., 435 P.2d 560; George v. Greer, 207 Okl. 494, 250 P.2d 858. Also, a general verdict on conflicting evidence presumptively includes a finding of all the facts necessary to support it; Black v. Ellithorp, Okl., 382 P.2d 23; Union Transportation Co. v. Lamb, 190 Okl. 327, 123 P.2d 660.

In his brief on appeal, plaintiff argues one proposition, stated as a question, as follows: "Can a written insurance contract's terms be altered by an oral agreement of the parties on an oral request?"

In general argument under this proposition, as we understand it, plaintiff argues at least inferentially (1) that the testimony of Mrs. L. was improperly admitted in violation of the parol evidence rule, and (2) that, in any event, the reduction in cargo coverage was improperly and ineffectively made in this case.

As to (1) above, the well-established general rule is that where the parties to a contract have deliberately put their engagement in writing, " * * * all parol evidence of *prior* or *contemporaneous* conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent" (emphasis added). 30 Am.Jur.2d Evidence, § 1016. To the same effect, see 32A C.J.S. Evidence § 901.

It is equally well-established, however, that the rule renders incompetent only evidence of prior or contemporaneous oral declarations, and does not apply to evidence of *subsequent* oral agreements; 30 Am.Jur.2d Evidence, Sec. 1063; 32A C.J.S. Evidence § 1004. In Minnehoma Oil Co. v. Koons, 99 Okl. 266, 226 P. 1048, this Court held:

"The rule which excludes parol testimony to contradict or vary the terms of a written instrument has no application where the object of such testimony is to show a new, subsequent agreement involving the same subject matter."

It is suggested that the rule as stated in *Minnehoma* is applicable only where there

has been either a breach or a completion of the prior written contract. This is not the case. See, for instance, the second paragraph of the court's syllabus in Dike v. Martin, 85 Okl. 103, 204 P. 1106. In that case, oral evidence of a subsequent agreement varying the terms of a prior written joint venture agreement, which had not been breached or completed, was held not to be barred by the parol evidence rule. The reason is aptly stated as follows in 30 Am.Jur.2d Evidence, Sec. 1063: "The parol evidence in such a case does not in any way deny that the original agreement was that which the writing purports to express, but merely serves to show that the parties have exercised their right to change or abrogate the original agreement * * *".

■ We hold that the testimony of Mrs. L. about plaintiff's instructions to reduce cargo insurance coverage to $2500 was properly admitted.

In the general discussion of the evidence in his brief, plaintiff takes the position that the endorsement reducing cargo insurance coverage was "not signed by anyone"; that the signatures of the president and secretary of the defendant company were "just printed on it"; and that the endorsement was not countersigned at the Mike Neff Insurance Agency. We do not agree. Plaintiff has obviously overlooked 36 O.S. 1971, Sec. 3618, which authorizes the use of facsimile signatures in insurance contracts. Also, the record clearly shows that the photocopy of the endorsement which plaintiff introduced in evidence in this case was actually a reproduction of the office copy of the endorsement furnished by defendant company from its files. Since the file copy presumably never left the company's office in Tulsa, it was of course not countersigned at the Mike Neff Insurance Agency in Sayre. However, Mrs. L. clearly testified that the original of the endorsement which she mailed to plaintiff was countersigned at the agency. Although plaintiff testified that he read the endorsement before destroying it, he did not testify that it was unsigned. The jury's presumptive finding that the endorsement was properly signed is therefore supported by uncontradicted evidence.

The authorities cited in plaintiff's brief are not in point. Most of them are cited or discussed in annotations at 8 A.L.R.2d 203 and 64 A.L.R.2d 982 and concern the method and manner of *cancellation* of insurance policies. We find no allegation or evidence in the record before us that the insurance policy sued on was ever cancelled or that either party thereto attempted to do so. The issue for jury determination was whether the amount of cargo insurance coverage (one of several types of coverage provided) had been changed from $6000 to $2500. The policy provision as to changes was as follows:

"Changes-Notice to any agent * * * shall not effect a waiver or a change in any part of this policy * * *; nor shall the terms of this policy be waived or changed, *except by endorsement issued to form a part of this policy, signed by the secretary.*" (Emphasis added).

■ As we have seen, the endorsement in this case bore the facsimile signature of the secretary, as authorized by 36 O.S. 1971, Sec. 3618. Included in the last paragraph was the following language: "Attached to and forming part of Policy No. CC 18675 of Mid-Continent Casualty Company, issued to * * *" plaintiff. We hold that there was no violation of the "change" provisions of the policy.

■ Nor do we find a violation of 15 O.S.1971, Sec. 137, which provides that a contract in writing may be altered by a contract in writing, or by an executed oral argument, and not otherwise. The facts as found by the jury upon conflicting but competent evidence were that plaintiff initiated the change in cargo insurance coverage in his phone call to Mrs. L. on December 5th. When defendant company thereafter issued the endorsement which plaintiff admittedly received before his fire loss, reducing the amount of the cargo insurance coverage as directed by plaintiff, the change was complete and executed (effective as of December 5th). For other examples of executed oral agreements, see

Pfeiffer v. Peppers Refining Co., 197 Okl. 603, 173 P.2d 581 and Kenison v. Baldwin, Okl., 351 P.2d 307.

 It is also suggested that because the endorsement bore the typewritten word "Accepted", with a place for plaintiff's signature, the parties treated the change as requiring a written agreement. However, in view of the finding of the jury, which is binding upon this Court, that plaintiff initiated the change orally in the telephone conversation, and in view of the substantially uncontradicted testimony as to plaintiff's normal method of doing business summarized in the second paragraph of this opinion, we are unable to agree. There was also uncontradicted testimony that defendant company desired plaintiff's signature merely as an acknowledgement of receipt of the endorsement. Since plaintiff himself initiated the change, the company's action in executing and delivering the endorsement constituted its "acceptance" of his "offer", and did not itself require an acceptance.

The judgment of the Court of Appeals is vacated and the judgment of the trial court is affirmed.

All the Justices concur.