2017 OK CIV APP 10

**BRYAN'S CAR CORNER, INC., an Oklahoma corporation d/b/a Bryan's Car Corner III, Petitioner/Appellee,**

v.

**Jacky MANGUM, d/b/a Mangum Auto Sales, Respondent/Appellant,**

and

**Pacer Cook, Respondent.**

**Case Number: 113079**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 12/15/2016

Mandate Issued: 02/23/2017

Joshua A. Creekmore, LEACH & SULLI-VAN, A Limited Liability Partnership, Duncan, Oklahoma, for Petitioner/Appellee

David W. Hammond, HAMMOND, ARCH-ER & KEE, P.L.L.C., Duncan, Oklahoma, for Respondent/Appellant

Pacer Cook, Oklahoma City, Oklahoma, Pro Se

JOHN F. FISCHER, JUDGE:

¶1 Jacky Mangum, d/b/a Mangum Auto Sales, appeals a judgment in favor of Bryan's Car Corner, Inc., requiring Mangum to release his lien on a 2008 GMC truck that Bryan's took in trade as part of an automobile sale transaction with Pacer Cook. Mangum had previously sold the truck to Cook and retained a security interest in the truck to secure repayment of the amount of the purchase price he financed for Cook. The dispute involves the amount of the payoff due Mangum for the truck. Bryan's tendered the amount stated in a written payoff statement from Mangum's employee. Mangum refused this amount and refused to release his lien, contending that the amount tendered was less than the balance due on Cook's loan. The case was tried to the district court. Judgment was entered in favor of Bryan's ordering Mangum to release its lien. Although the amount stated in Mangum's payoff statement was not the full amount Cook owed to Mangum, the district court found that Bryan's tendered the amount in the payoff statement before that amount was withdrawn. Consequently, Bryan's tender of the amount in Mangum's payoff statement was sufficient to discharge Mangum's lien, and we affirm.

## BACKGROUND

¶2 In July of 2011, Cook bought a 2008 GMC truck from Mangum. As part of that transaction, Mangum agreed to finance approximately $11,000 of the purchase price. Cook signed a promissory note agreeing to repay the loan amount at $401.47 per month. Cook also granted Mangum a security interest in the truck to secure repayment of the loan. Mangum perfected his security interest on July 20, 2011.

¶3 On October 5, 2011, Cook went to Bryan's location to purchase a 2006 Infiniti. Cook traded his truck to Bryan's as partial payment for the Infiniti. To document this transaction, Bryan's salesman prepared a Retail Installment Sales Contract dated October 5, 2011, and used $10,750 as the estimated payoff amount for Cook's truck. The Retail Installment Sales Contract was accompanied by a Motor Vehicle Delivery Agreement. The Agreement stated that the Sales Contract was subject to Cook's ability to obtain financing. The Agreement contained other contingencies and obligations of the parties and was also used to govern the "Spot Delivery" of the Infiniti being purchased by Cook. Cook signed the Sales Contract and Delivery Agreement, began the process of obtaining financing, turned over possession of his truck to Bryan's and left in the Infiniti.

¶ 4 On October 6, 2011, Crystal Gooden, a Mangum employee, faxed a statement to Bryan's, which showed a payoff amount of $8,865.44. The document provided that the amount quoted was good for ten days. At about the same time, Bryan's owner inspected the truck and discovered undisclosed damage that diminished the value of Cook's trade-in by approximately $2,000. Bryan's contacted Cook to renegotiate the terms of the October 5 contract, and Cook agreed to the new terms and signed a new contract with Bryan's on October 6. The second contract used the $8,865.44 figure Gooden had provided as the payoff amount for Cook's trade-in and increased the purchase price of the Infiniti by approximately $1,900.

¶ 5 Around October 16, 2011, Gooden called Bryan's to check on the status of the Cook transaction. She was told that additional documentation had been requested by Cook's lender and that the financing had not yet been approved. Gooden was told that Bryan's had just received the additional documents from Cook and anticipated that the funding should be approved "in the next week." Gooden did not object or withdraw the original ten-day payoff offer. Bryan Bingham, Bryan's owner, testified that it was not unusual for a transaction to be completed outside the customary ten-day payoff period. Therefore, when the lender notified Bryan's on October 19, 2011, that Cook's financing had been approved, a Bryan's employee called Gooden and requested an updated payoff statement for Cook's trade-in to cover any additional interest due because of the delay in obtaining financing. This time, the payoff amount Gooden provided to Bryan's was approximately $1,900 higher than the amount stated in her October 6 fax. When asked in a second phone call why there was such a difference, Gooden stated she did not know the reason but would find out. Gooden could not remember the date of these phone calls, but Bryan Bingham testified that he learned of the discrepancy on October 21. Gooden testified that after the second phone call, she investigated the matter and turned over the results to Mangum, who instructed her not to accept any check or correspondence from Bryan's. Gooden did return Bryan's call or otherwise explain the difference between the two payoff figures. On October 24, 2011, Cook's lender deposited $8,865.64 in Bryan's bank account to cover the cost of Cook's trade-in. Bryan's mailed Mangum a check for that amount on October 28, 2011. Mangum refused the check.

¶ 6 When Bryan's and Mangum were unable to resolve the dispute, Bryan's filed this action to compel Mangum to release its lien on the 2008 truck. All other claims and cross-claims between the parties were previously resolved and the lien issue was tried to the district court without a jury. The district court found that the October 6, 2011 payoff statement did not state the full amount owed by Cook to Mangum. Nonetheless, the court found that Bryan's had tendered the $8,865.44 before Mangum withdrew the offer to release his lien on payment of that amount. The district court ordered Mangum to release its lien on retender by Bryan's of the $8,865.44. In a subsequent proceeding, the district court awarded Bryan's $9,750.00 in attorney fees. Mangum appeals both orders.

## STANDARD OF REVIEW

¶ 7 In an action at law tried without a jury, "the trial judge's determination of the facts bears the force of a verdict rendered by a well-instructed jury. It must be affirmed if supported by any competent evidence." *Bradley v. Clark*, 1990 OK 73, ¶ 3, 804 P.2d 425.

> [T]he sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it.

*Park v. Sec. Bank and Trust Co.*, 1973 OK 72, ¶ 21, 512 P.2d 113. Issues of law are reviewed pursuant to the de novo standard of review. *Brown v. Nicholson*, 1997 OK 32, n.1, 935 P.2d 319. De novo review involves a plenary, independent, and non-deferential examination of the trial court's rulings of law. *In re Estate of Bell–Levine*, 2012 OK 112, ¶ 5, 293 P.3d 964.

¶ 8 Whether a party is entitled to an attorney fee pursuant to a statute is a question of law, reviewed de novo. *Boston Ave. Mgmt., Inc. v. Associated Res., Inc.*, 2007 OK 5, ¶ 10,. 152 P.3d 880.

## ANALYSIS

¶ 9 The testimony at trial regarding the material dates and conversations was conflicting. For example, although Cook and Mangum testified that $10,750 was the payoff number Mangum provided for the truck in an October 5 conversation, Gooden testified that Cook came to her office around October 1, 2011, and asked for a payoff amount on his 2008 truck, which she verbally provided to him. She provided the $8,865.44 amount, because she did not discover that was not the correct amount until approximately three weeks later when Bryan's asked for a second payoff amount. Gooden also provided the $8,865.44 number to Bryan's salesman when he called on October 6, 2011, while Cook was in the salesman's office and after confirming with Cook that he was requesting the payoff. She confirmed the $8,865 amount in writing, the same day, when she faxed a payoff statement to Bryan's stating that was the amount necessary to release Mangum's lien. Cook testified that he did not know what the payoff amount was until he called Mangum from Bryan's office on October 5 and was told the amount was $10,750. However, the $10,750 was an obvious estimate. An internal document subsequently prepared by Mangum showed the amount due on October 5, 2011, was $10,720.40. There is no evidence in the record that this document was provided to Bryan's, prior to October 28, 2011, when Bryan's mailed the $8,865.44 check to Mangum.

¶ 10 There are also discrepancies concerning when Bryan's was informed that $8,865.44 was not the correct payoff amount. Gooden testified she discovered the mistake after a phone conversation with a Bryan's employee approximately three weeks after October 6, 2011. She testified she investigated the matter, told Mangum about the issue and then "let him take it from there." It does not appear that Gooden reported the results of her investigation to Bryan's or called

Bryan's back to explain the discrepancy. Bryan Bingham testified that he first learned of the discrepancy from one of his employees late on the evening of October 21, 2011, after his employee had talked to Gooden and after the lender notified Bryan's that Cook's loan had been approved. Bingham testified that he called Mangum later and told him that they had contracted with Cook based on the $8,865 amount and asked why they were now being told the payoff amount had gone up to "$10,700-and-some-change" in only six days. Mangum testified that on October 25 or 26, 2011, he called Bingham after Cook came to his office and showed him the first contract with the $10,750 payoff amount. Mangum testified he told Bingham that "Y'all have got the figure right on your contract." On October 28, 2011, Mangum did prepare a second statement showing Cook's payoff amount was $10,874.64 as of October 31, 2011. This payoff statement was faxed to the Used Car Commission. There is no evidence in this record that a copy was provided to Bryan's at that time. However, in late October, Mangum instructed his employees not to accept any certified mail or any correspondence from Bryan's that appeared to transmit a check.

¶ 11 The district court was charged with sorting through these various accounts and determining what actually happened. In breach of contract cases, "the credibility of witnesses and the effect and weight to be given to testimony are questions of fact to be determined by the trier of facts, whether court or jury, and are not questions of law for [this Court] on appeal." *Robert L. Wheeler, Inc. v. Scott*, 1991 OK 95, ¶ 12, 818 P.2d 475. The district court's findings of fact will "be affirmed if supported by any competent evidence." *Bradley v. Clark*, 1990 OK 73, ¶ 3, 804 P.2d 425.

¶ 12 Mangum raises two issues in this appeal. First, he argues that the district court erred in directing the release of his lien on Cook's 2008 truck. Second, Mangum argues that Bryan's is not entitled to an award of attorney fees.

### I. The Security Interest Issue

¶ 13 Bryan's petition sought release of Mangum's lien, citing a provision of Oklahoma's Motor Vehicle statutes.

A secured party shall, within seven (7) business days after the satisfaction of the security interest, furnish directly or by mail a release of a security interest to the Tax Commission and mail a copy thereof to the last-known address of the debtor. If the security interest has been satisfied by payment from a licensed used motor vehicle dealer to whom the motor vehicle has been transferred, the secured party shall also, within seven (7) business days after such satisfaction, mail an additional copy of the release to the dealer.

47 O.S. Supp. 2015 1110(B)(1). This statute is clearly applicable, but only insofar as it concerns the additional remedial measures imposed regarding transactions involving motor vehicles and security interests in those vehicles. The parties' focus on principles of general contract law and the lien statutes in Title 42 of the Oklahoma statutes for the substantive law governing this case is misplaced. Both the original sale of the truck from Mangum to Cook and Cook's sale of the truck to Bryan's are covered by the Uniform Commercial Code. 12A O.S.2011 2-102 ("this Article applies to transactions in goods").

 ¶ 14 The legal basis for the district court's ruling is not disclosed in its judgment. However, even if the district court improperly relied on the substantive law presented by the parties, we will affirm if the district court's result was correct. "This Court may render the judgment which the district court should have rendered. ... This Court may affirm the judgment below on a different legal rationale." *Lafalier v. Lead–Impacted Cmtys. Relocation Assistance Trust*, 2010 OK 48, n.88, 237 P.3d 181 (citing *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 9, 10 P.3d 888). Application of the Uniform Commercial Code achieves the same result reached by the district court.

A. The Uniform Commercial Code Result

██ ¶ 15 In the original transaction, title to the truck was transferred from Mangum to Cook subject to a "security interest" in favor of Mangum. 12A O.S.2011 1-201(35) (" 'Security interest' means an interest in personal property ... which secures payment or performance of an obligation."). Title

to the truck passed to Bryan's when it purchased the truck from Cook. 12A O.S.2011 2-401(2) ("title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest"). But Bryan's ownership remained subject to Mangum's security interest, at least initially. 12A O.S.2011 1-9-201 ("a security agreement is effective according to its terms between the parties [and] against purchasers of the collateral").

 ¶ 16 Before adoption of the Uniform Commercial Code, a secured party could consent to the sale of the collateral thereby releasing its security interest in the collateral purchased, and that consent could be established by implication. *Poteau State Bank v. Denwalt*, 1979 OK 102, ¶ 12, 597 P.2d 756. The Uniform Commercial Code did not change that law. "[T]he doctrine of implied authorization has been allowed to remain in force under the Uniform Commercial Code." *Id. See also*, 12A O.S. 9-306(2) ("[A] security interest continues in collateral, notwithstanding sale, exchange or other disposition thereof, unless the disposition was authorized by the secured party in the security agreement or otherwise...."). Effective July 1, 2001, section 9-306 was repealed and readopted as amended. *See* 12A O.S.2011 1-9-315. The relevant provision, section 1-9-315(a)(1), now states: "[A] security interest ... continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest...." The language of the two statutes is similar but not identical. According to the Official Comment to this section, the language of section 1-9-315(a)(1) "makes explicit that the authorized disposition ... is an authorized disposition 'free of' the security interest...." 12A Okla. Stat. Ann. 2011 1-9-315 cmt. 2 (West 2015). We hold that the enactment of section 1-9-315 did not abrogate the law of "implied authorization" recognized in *Denwalt*, 1979 OK 102, ¶ 12, 597 P.2d 756. What constitutes an implied authorization to sell collateral is an issue of fact. *Id.*

 ¶ 17 Further, 12A O.S.2011 1-9-623 provides that a debtor such as Cook has

the right to redeem collateral by fulfilling all of the obligations secured by the collateral. Not only was Cook entitled to obtain the release of Mangum's security interest, but also he was entitled to "an accounting of the unpaid obligations secured by collateral" from Mangum in order to determine how much was due. 12A O.S.2011 1-9-210. Gooden satisfied Mangum's obligation on October 6, 2011, when she faxed the payoff statement to Bryan's stating the amount due was $8,865.44. Bryan's tendered that amount to Mangum on October 28, 2011. "If tender of payment of an obligation to pay an instrument is made ... the effect of tender is governed by principles of law applicable to tender of payment under a simple contract." 12A O.S.2011 3-603(a). "At common law, a tender of money is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less than the amount then due on a specified debt or obligation." *Davidson v. Rogers*, 1970 OK 114, ¶ 15, 471 P.2d 455. "The unconditional tender to a creditor of the amount of a debt acts to extinguish the lien on personal property pledged to secure its payment when the tender is made by one clearly having the legal right to make the tender." *Ivey v. Henry's Diesel Serv., Inc.*, 1966 OK 170, ¶ 0, 418 P.2d 634 (Syllabus 2).

¶ 18 Consequently, Mangum's security interest in the truck could be released if he authorized the sale of the truck to Bryan's and Bryan's tendered the amount due. From the evidence in this record, it is undisputed that Mangum was aware of and authorized the truck's sale to Bryan's. The legal consequence of Mangum's authorization was an agreement that his security interest in the truck would not be effective as to Bryan's after the sale. The unresolved issue in this case is whether the tender of an amount less than the amount of the debt is effective to release a security interest if the amount tendered is the amount the creditor stated was due. Mangum relies on the general principle that a tender of the amount due will not operate to discharge a lien if the lienholder in good faith believes that a greater sum is due. *First Nat'l Bank of Davis v. Britton*, 1939 OK 334, 185 Okla. 566, 94 P.2d 896. In *Britton*, the amount tendered was equal to the amount of the original debt. The bank refused the tender claiming additional fees and expenses associated with efforts to collect the debt were also due. The Oklahoma Supreme Court reversed the judgment that found the bank lost its lien when it refused to accept the tender and remanded the case for a determination of whether the bank, in good faith, believed that a larger amount was due when it refused the tender.

¶ 19 The facts in *Britton* and those cases applying the principle relied on by Mangum are distinguishable. In those cases, either the debtor was mistaken as to the amount owed or the amount tendered was, through no fault of the lender, less than the creditor's good faith claim to a higher amount. *See, e.g., Orr v. Mallon*, 1942 OK 204, 190 Okla. 598, 126 P.2d 83 (tender of amount of pre-work estimate did not discharge debt for actual repair costs). Here, the difference in the amount due and the amount tendered resulted from Mangum's unilateral mistake. Even though Mangum had a good faith belief that the amount tendered was less than the amount due, the *Britton* rule does not control when the debtor is solely responsible for that difference. A different principle of law applicable to "simple contract[s]," 12A O.S.2011 3-603(a), resolves this situation.

¶ 20 Mangum's October 6 fax transmission was, in essence, an offer to Cook and to Bryan's to release his security interest in Cook's truck in exchange for the payment of $8,865.44. Although Bryan's did not mail a check to Mangum until October 28, after the discrepancy in payoff amounts was known, the financing had been completed and the $8,865.44 deposited in Bryan's bank account before Mangum told Bingham $8,865.44 was not the correct amount. Even though $8,865.44 was less than the amount of Cook's debt, it was the amount originally determined solely by Mangum's employee.

Where the amount due is within the exclusive knowledge of the creditor, and the creditor on demand neglects or refuses to indicate the correct amount that is due, the debtor may tender so much as he thinks is justly due, and if less than the true

amount, the tender, nevertheless, will be good.

*Krauss v. Potts*, <u>1916 OK 451, 53 Okla. 379, 156 P. 1162</u> (Syllabus 2). At least as to Bryan's, the payoff amount on the truck was within the exclusive knowledge of Mangum, and the payoff amount provided was not correct.

¶ 21 More importantly, the district court found that Mangum's October 6, 2011 "offer" to release his security interest was accepted by Bryan's tender of the $8,865.44 before Mangum withdrew that offer. That finding is supported by competent evidence. "Where one party to a contract has made a mistake, but this mistake is not known to the other party to the contract, it does not invalidate the contract." *Seigle v. Hamilton–Carhartt Cotton Mills*, <u>1922 OK 370, ¶ 0, 89 Okla. 68, 213 P. 305</u> (Syllabus 1) (acceptance of offer to purchase goods at a price mistakenly quoted by seller entitled buyer, on seller's refusal to deliver, to the difference between the price quoted and the price buyer subsequently paid).[1] *See also, Security State Bank v. Fussell*, <u>1913 OK 35, 36 Okla. 527, 129 P. 746</u> (payment of amount creditor states is due on note in response to debtor's request satisfies the debt); *Segars v. Classen Garage and Serv. Co.*, <u>1980 OK CIV APP 9, 612 P.2d 293</u> (tender of amount creditor stated was due to repair vehicle discharged creditor's lien on the vehicle even though creditor subsequently asserted right to recover additional amount for legitimate storage fees); *Ford Motor Credit Co. v. Goings*, <u>1974 OK CIV APP 28, 527 P.2d 603</u> (affirming judgment for debtor in wrongful replevin action where debtor tendered first payoff amount provided by lender even

though subsequently stated payoff amounts were higher). Although the discrepancy in payoff amounts was discussed before Bryan's mailed the check to Mangum, Mangum never provided Bryan's with a written payoff amount other than $8,865.44.

¶ 22 Finally, Mangum argues that Bryan's use of the $8,865.44 payoff figure resulted in an "$1,800 windfall to Bryan's instead of Mr. Cook." The argument is invalid. After the terms of the Cook/Bryan's transaction were renegotiated, the purchase price of the Infiniti was increased approximately $1,900. Use of the lower payoff figure also increased Cook's down payment from $2,250 to $4,134.56. Further, and as Mangum testified, acceptance of the lower payoff amount would not discharge Cook's debt to Mangum. Cook was still responsible for the difference. *See* 12A O.S.2011 3-603(c) ("If tender of payment of an amount due on an instrument is made … the obligation of the obligor to pay interest after the due date on the amount tendered is discharged."). After the sale of the truck to Bryan's, Cook remained responsible for any balance due to Mangum. As between Mangum and Bryan's, all that the tender accomplished was to fulfill the contingency required by Mangum's contractual agreement to release his security interest in Cook's truck on payment of $8,865.44. The judgment in favor of Bryan's requiring Mangum to release his security interest in Cook's truck is affirmed.

## II. The Attorney Fee Issue

¶ 23 Mangum also challenges Bryan's right to an award of attorney fees as the prevailing party in this case. Mangum

---

1. Mangum argues that Bryan's should have made "reasonable inquiry" when it received the October 6, 2011 payoff figure, because it was lower than the amount used in the first Retail Installment Sales Contract. Mangum cites no authority for this proposition. "The court has on many occasions said that judicial review will not be given to issues that receive only superficial treatment in an appellate brief or to assignments of error that lack a reasoned argument or supporting authority." *Cox Okla. Telecom, L.L.C. v. State of Okla. ex rel. Okla. Corp. Comm'n*, <u>2007 OK 55, ¶ 33, 164 P.3d 150</u>. Further, the testimony of Bryan's salesman regarding this matter was clear and consistent; until he received a

written payoff statement he did not consider the transaction capable of being finalized because informal statements of a payoff amount often proved to be inaccurate. Further, even if this issue had been preserved and was relevant to the disposition of the case, the argument would fail. "[A] general [jury] verdict on conflicting evidence presumptively includes a finding of all the facts necessary to support it." *Wilson v. Mid–Continent Cas. Co.*, <u>1973 OK 50, ¶ 6, 510 P.2d 274</u>. The judgment of the district court in an action tried without a jury is accorded "the same conclusive effect as if it were based upon a jury verdict." *United Engines, Inc. v. McConnell Constr., Inc.*, <u>1980 OK 139, ¶ 4, 641 P.2d 1101</u>.

correctly notes that, because Oklahoma follows the American Rule, "attorney fees are not ordinarily recoverable in the absence of a statute or an enforceable contract." *City Nat'l Bank & Trust Co. v. Owens*, 1977 OK 86, ¶ 11, 565 P.2d 4. *See Fulsom v. Fulsom*, 2003 OK 96, ¶ 8, 81 P.3d 652 (Oklahoma jurisprudence recognizes that attorney fee statutes are strictly applied). Mangum argues that 42 O.S.2011 176, the statute authorizing attorney fees in lien foreclosure cases, does not apply because Bryan's action is for release, not foreclosure, of a lien. Section 176 provides: "In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action." As Mangum interprets the statute, if he filed an action to enforce his lien and lost, Bryan's would be entitled to attorney fees, but because he took no action forcing Bryan's to seek removal of the lien, Bryan's cannot recover its attorney fees even though it was the prevailing party.[2]

¶ 24 We agree that section 176 does not apply, but for a different reason. "In any civil action to recover ... [on a] contract relating to the purchase or sale of goods ... the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." 12 O.S.2011 936(A). As we have previously held, the transfer of the truck from Cook to Bryan's resulted from a contract for the purchase and sale of goods governed by the Uniform Commercial Code.[3] Mangum's contractual agreement to release his lien on the truck related to that contract. Bryan's is the prevailing party in its action against Mangum and, therefore, entitled to an attorney fee pursuant to section 936(A). The district court's judgment awarding Bryan's an attorney fee is affirmed.

## CONCLUSION

¶ 25 The district court heard conflicting testimony from the witnesses involved in this transaction. It resolved those conflicts and ultimately found that Mangum offered to release his security interest in the 2008 truck on payment of $8,865.44, and Bryan's tendered that amount before Mangum's offer was withdrawn. The findings of the district court are supported by competent evidence. The judgment requiring release of Mangum's security interest is affirmed. Likewise, as the prevailing party in this action on a contract related to the purchase and sale of goods, Bryan's is entitled to recover an attorney fee, and that judgment is affirmed.

¶ 26 **AFFIRMED.**

WISEMAN, P.J., concurs, and GOODMAN, C.J., dissents.

GOODMAN, C.J., dissenting:

¶ 1 I respectfully dissent. Mangum Auto Sales presented a ten-day payoff statement to Bryan's Car Corner, Inc., on October 6, 2011, in the amount of $8,865.44. It is undisputed that more than ten days elapsed without tender of the amount specified. As a result, Bryan's had a duty to make further inquiry to ascertain a new payoff amount. Although the testimony at trial was conflicting, the record provides Bryan's contacted Mangum on October 21, 2011, and was told the 10–day payoff amount was actually $10,720.40.[1] The parties subsequently spoke on or about October 25, 2011, to discuss the discrepancy between the two payoff amounts and to attempt to reach a mutually acceptable resolution. Contrary to the majority's assertion, therefore, it is undisputed Bryan's knew the correct payoff amount was $10,720.40 prior to tendering the $8,865.44 to

2. *Cf., Robey v. Long Beach Mortg. Corp.*, 2005 OK 64, 124 P.3d 221 (prevailing party in post-foreclosure action was entitled to attorney fee pursuant to 42 O.S.2011 176, because it was not provided notice of the foreclosure proceeding and was forced to bring the subsequent action to protect its lien).

3. Bryan's cites various cases in support of its attorney fee judgment generally affirming attorney fee awards entered in motor vehicle lien dispute cases pursuant to 42 O.S.2011 176. All of these cases predate the adoption of the Uniform Commercial Code in Oklahoma and are, therefore, inapplicable.

1. The record alternatively provides $10,720.44.

Mangum on October 28, 2011. Accordingly, Bryan did not tender to Mangum "a sum not less than the amount then due on a specified debt or obligation." See *Davidson v. Rogers*, 1970 OK 114, ¶ 15, 471 P.2d 455. I would therefore reverse the trial court's order requiring release of Mangum's security interest in the vehicle and the subsequent award of a prevailing party attorney's fee to Bryan.