1998 OK CIV APP 15

1998 OK CIV APP 15

**OKLAHOMA STATE BANK OF ADA, Plaintiff/Appellee,**

v.

**CITIZENS BANK OF ADA, Defendant/Appellant.**

**No. 89457.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 30, 1998.

D. Craig Shew, Ada, for Appellant.

Barry K. Roberts, Norman, for Appellee.

### OPINION

GARRETT, Judge:

¶ 1  Appellee, Oklahoma State Bank of Ada (OSB), sued Appellant, Citizens Bank of Ada (CB), for conversion after CB refused to transfer 400 shares of its stock, registered on its corporate books to James and Anita Robbins, and to reissue the stock to OSB. The trial court granted summary judgment in favor of OSB on March 21, 1997, on the issue of liability. The order contained the following:

> 1.  The facts as stipulated in Defendant's Motion for Summary Judgment and Plaintiff's reply thereto are uncontroverted.
> 2.  In spite of Defendant's analysis of *Travis v. Dale (sic) State Bank*, 553 P.2d 486, said case is controlling.

¶ 2  The trial court entered judgment for OSB on April 21, 1997, ordering CB to transfer and reissue the stock, and for $4,000.00 in damages for lost dividends. The trial court subsequently awarded attorney fees to OSB, pursuant to 42 O.S.1991 § 176. CB appeals these orders of the trial court.

### I.  LIABILITY ISSUE

■  ¶ 3  James and Anita Robbins obtained a loan from OSB and pledged 400 shares of CB stock as security for the debt.[2] The Robbins obtained corporate loans from CB, secured by other property. James Robbins personally guaranteed the CB loans. James Robbins died in December, 1994, and the loans at OSB and CB went into default.

¶ 4  OSB gave notice pursuant to 12A O.S. 1991 § 9–505(2), that it intended to retain the 400 shares of CB stock as payment for the Robbins' debt. OSB requested CB to transfer the registration on its corporate books from the Robbins to OSB and to reissue it in the name of OSB. CB responded that it was prohibited from doing so pursuant to the Oklahoma Banking Code, specifically under 6 O.S.1991 § 706(A), because the Robbins were indebted to CB for matured and unpaid obligations. Section 706(A) provides:

> A.  Transfer of shares. The shares of stock of a bank or trust company shall be deemed personal property and shall be transferred on the books of the bank or trust company, in such manner as the by-laws may prescribe but no stock shall be transferred on the books of any bank or trust company where the registered holder thereof is indebted to the bank or trust company for any matured and unpaid obligations. The shares of stock of a stockholder indebted to the bank or trust company, as provided herein, may be transferred or any claims of the bank or trust company, as herein defined, may be waived at any time by written consent of the bank or trust company, executed by an officer other than the borrowing stockholder.

¶ 5  CB contends the trial court erred in finding it is obligated to transfer the Robbins' CB stock to OSB based on *Travis v. Del State Bank*, 1976 OK 88, 553 P.2d 486 and raises the following propositions of error:

**2.** There were two loans, and 200 shares was pledged each time.

1. Section 706(A) of the Oklahoma Banking Code prohibits CB from making such transfer when the registered shareholders are indebted to the issuing bank for matured and unpaid obligations;

2. Section 706(A) of the Oklahoma Banking Code does not create a lien in favor of the issuing bank and CB is not asserting a lien; and,

3. Section 706(A) of the Oklahoma Banking Code creates a statutory transfer restriction and under the Uniform Commercial Code there is no requirement that such a transfer restriction be noted on the face of the stock certificate.

¶ 6  The CB stock at issue has no notation on the face of the certificates that the stock may not be transferred when the registered owners of the stock have matured and unpaid obligations to the issuing bank.  CB contends that the only instances in which the restrictions against transfer of stock must be notated on the certificates are when the restriction is imposed by the issuing bank, and when the bank is asserting a lien against the stock.  See 12A O.S.Supp.1995 § 8–204 and Comment 5 thereto.  CB contends neither case applies to it.  It argued it merely asserted a restriction against transfer based on a statutory requirement, and thus, under the UCC, no notation is necessary.

¶ 7  Additionally, CB contended no lien is created by § 706(A) and that it is not asserting a lien.  Thus, it claimed *Travis v. Del State Bank*, supra, is not applicable to this case.  *Travis* addressed the following issue, a certified question from the U.S. District Court for the Western District of Oklahoma:

Does 6 Oklahoma Statutes 706(A) create a lien on stock in favor of an issuing bank which is superior to the lien of a pledgee of that stock where there is no notation of the bank's asserted lien on the stock in question?

¶ 8  The Supreme Court recognized the existence of a lien created by § 706(A) in favor of the issuing bank, but held the absence of a notation on the certificates of the transfer restriction resulted in the superiori-ty of the lien of the purchaser, Travis.  The Court analyzed § 706 and the bank stock in conjunction with the Uniform Commercial Code (UCC), specifically 12A O.S.1971 § 8–103, now 12A 1991 § 8–209, which requires the right to a lien must be conspicuously noted on the security to be valid against a purchaser.[3]  The Court concluded the bank stock certificates were security as defined by 12A O.S.1971 § 8–102, and the notation requirement applied to the stock.

¶ 9  CB argued § 706 does not create a lien in its favor, and that *Travis* is not applicable to this case because, unlike Del State Bank, CB is not asserting a lien on the stock, but is merely enforcing a transfer restriction which is not subject to the UCC.  CB maintained there is no factual basis or legal support for the *Travis* Court's conclusion that § 706(A) creates a lien in favor of the issuing bank.  In fact, CB argued, the Supreme Court pointed out that the statutory language does not expressly create an issuers lien, but that the Court had recognized such liens, citing four cases therein.  However, CB contends these cases do not stand as authority for the creation of such liens, but are distinguishable to this case.

¶ 10  Our reading of the *Travis* case leads us to the conclusion that, by its analysis of § 706 and its application to the UCC provisions on securities, the Court held that § 706 created a lien in favor of the issuing bank, subject to the requirements of notation under the UCC.  Contrary to CB's contentions, we hold *Travis* does control this case, and, thus, § 706(A) created a lien in favor of it, the issuing bank.  Although it contends it was not asserting a lien by arguing the application of the "transfer restriction" of § 706, nevertheless § 706 allows the issuing bank, CB, certain rights in the stock, which is in effect, a lien, as a means of protecting itself against the debts of its shareholders, i.e., the Robbins herein.  CB's failure to include the transfer restriction on the certificates results in OSB's lien being superior to CB's lien.  The material facts were undisputed.  OSB was entitled to judgment as a matter of law.

---

3. The Court held a pledgee after default would stand in the same position as a purchaser, citing *Eubank v. Bryan County State Bank*, 216 F. 833 (8th Cir.1914).

Summary judgment was proper. *Erwin v. Frazier*, 1989 OK 95, 786 P.2d 61.

## II. ATTORNEY FEES

¶ 11 A Supplemental Petition in Error was filed by CB after the trial court's award of attorney fees to OSB pursuant to 42 O.S.1991 § 176. CB raises the following propositions of error:

1. There is no statutory authority for such an award as is required by the American Rule; and

2. Lien foreclosure statute, 42 O.S. § 176, has no application because neither party was asserting a lien on the subject stock.

¶ 12 Following the Supreme Court's decision in *Travis*, supra, the federal court which had certified the above question for decision, awarded attorney fees in *Travis v. Del State Bank*, 430 F.Supp. 312 (W.D.Okla.1976), pursuant to 42 O.S. § 176, which provides:

In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action.

¶ 13 In the federal case, the bank argued it was only an incidental defendant and that attorney fees could only be awarded against the principal debtor and against the particular res which is the subject matter of the litigation. After reviewing Oklahoma law, the federal court held § 176 applied to any action brought to enforce any lien, not just to an action against the primary debtor on a note. The court stated:

The rule to be discerned from these decisions is that if the lien claimants in the case are the principal parties who are in fact the real adversaries seeking a judicial hearing and determination of their conflicting claims the successful lien claimant is entitled to recover a reasonable attorney's fee to be taxed as costs in the action against the losing lien claimant. ... In the instant proceeding, there can be no question as to the principal parties. They

were the plaintiff and the defendant Bank. [Citations omitted.]

¶ 14 We have previously decided this case involves the competing lien interests of the principal parties, i.e., OSB and CB. The facts of the federal case and this case are similar. Although the federal decision is only persuasive, it is based on decisions of the Oklahoma Supreme Court, and this Court is bound by these Oklahoma decisions.[4] The award of attorney fees was proper.

¶ 15 OSB has also requested an award of attorney fees for appeal-related services. This request is granted, and this case is remanded to the trial court for an evidentiary hearing under the guidelines of *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and for the entry of a proper order for such fees.

¶ 16 **AFFIRMED AND REMANDED.**

JOPLIN, P.J., and JONES, V.C.J., concur.

---

4. See *Ivey v. Henry's Diesel Service, Inc.*, 1966 OK 170, 418 P.2d 634; *Voelkle v. Sisemore*, 1959 OK 51, 338 P.2d 1080; and *Commercial Dis-* *count Co. v. Midwest Chevrolet Co.*, 1956 OK 172, 301 P.2d 356.